[No. 29392. Department Two. February 13, 1946.]

PATRICK A. HENEY, JR., *Respondent,* v. BERNICE B. HENEY, *Appellant.*[1]

*Padden & Moriarty* and *Melvin T. Swanson,* for appellant.

*Karl P. Heideman,* for respondent.

ROBINSON, J.—Plaintiff, Patrick A. Heney, Jr., and Bernice Burke were married in 1930. Their one child, Barbara Anne, was born in 1936. In November, 1941, the plaintiff, who had been accustomed to disappearing for long periods, left the home given them by plaintiff's father and mother

[1] Reported in 165 P. (2d) 864.

at the time of their marriage, and never returned. Shortly after deserting his family, he established his residence at a summer home which he owned at Lake Lucerne. In his opening statement of the case, his counsel said, by way of explanation:

"He found it impossible to live at home and life was made so miserable for him there that after he had been away for some time he sought the companionship of another woman and has had two children by this other woman, and these children and this other woman are now living with him."

He began this action for divorce in March, 1943, charging cruelty and excessive use of intoxicating liquor.

Patrick A. Heney, Sr., and his wife, Katherine L. Heney, the plaintiff's father and mother, were well-to-do, widely known, and equally widely respected and beloved. Mr. Heney, Sr., died in 1938. Though long bedridden, the plaintiff's mother was still living when this action was begun. At some time subsequent to her death, which occurred on January 11, 1944, the defendant in this cause served an unverified answer, with a cross-complaint, praying for a divorce. At the beginning of the trial, the defendant, through her counsel, requested, and received, the permission of the court to withdraw her cross-complaint. Although no reason for doing so was then stated, it is clearly apparent from the record that, when actually faced with the trial, appellant found it impossible to assume the role of plaintiff in a divorce action, on account of her deeply grounded religious belief that marriage is a holy sacrament and divorce sinful and abhorrent.

At the close of all the evidence, the trial judge expressed the opinion, in the strongest possible terms, that the parties could not possibly live together and should be divorced. He further indicated that he found it impossible to divorce the parties because the plaintiff had not proven his allegations concerning cruel treatment and excessive use of intoxicating liquor, or any other grounds that would warrant the entry of a decree in his favor. Plaintiff's attorney suggested: "Wouldn't the entire public, and everybody else be best served by granting the plaintiff a divorce?" and

argued that question at some length. At the conclusion of his remarks, the court, addressing defendant's counsel, said:

"Mr. Swanson, these people have no future together. I suggest very strongly that Mrs. Heney reconsider the matter and restore her application."

Mr. Swanson replied that such action by his client might arouse prejudice against her daughter in her school relationships, and some other related matters, but finally asked for a recess to confer with his client. When the court resumed, Mr. Swanson announced:

"If the Court please, we have decided to renew as our plea, the matters set forth in our amended answer and cross complaint."

The court thereupon, at once, took up the matter of the property division and arrived at conclusions which were later embodied in the interlocutory decree. The defendant, feeling that the award to her is inequitable, has appealed therefrom on that question only. Before entering into that very complex inquiry, it seems advisable to state the facts with more particularity. Among the findings of fact entered by the court, we find the following:

"IV. That the defendant is a fit and proper person to have the custody and control of said minor child. That the plaintiff is unfit and unworthy of any custody of said child.

"V. That shortly after the birth of said child, which was on August 22, 1936, the plaintiff began to absent himself from the home of the plaintiff and defendant, and would leave and go away to parts unknown or stay at hotels downtown for periods of days, weeks or months. That during said time he would remain in a drunken, stuporous condition and would waste and spend money and proceeds of any property that he had. That at various times while at home plaintiff carried himself on in a disgusting manner, using abusive language, engaging in cruel conduct and treatment toward the defendant, several times beating her severely and striking her. That plaintiff deserted defendant in November, 1941. That the plaintiff has taken up residence with a woman by name of Alice Von Gaver, and has for some time resided with said woman and does now reside with said woman at the home that was the home of plaintiff's father and mother at 1618 E. Aloha Street, Seattle,

Washington. That plaintiff's relationship with said Alice Von Gaver has been, and now is adulterous, and that plaintiff has had two children by said Alice Von Gaver."

Some additional facts should be stated before considering the appellant's contention that the property settlement should be modified.

There is undisputed evidence that, in addition to giving the parties the home on Queen Anne Hill at the time of their marriage, Mr. Heney, Sr., gave his son ten thousand dollars. There is some rather indefinite evidence, which is denied by the defendant, to the effect that a portion of this was used for their living expenses. There is also testimony that, some four or five years after their marriage, Mr. Heney, Sr., gave the plaintiff thirty-three thousand dollars. This the plaintiff promptly dissipated, in some way not clearly shown. The defendant testified that she got no benefit from any part of it, and that testimony was not rebutted.

In March, 1921, Mr. Heney, Sr., took out a twenty payment policy on his son's life in the amount of twenty-five thousand dollars, payable to himself, if living, otherwise to his wife. On March 6, 1931, within less than a year after the marriage of the parties, the defendant, Bernice Heney, was substituted as beneficiary. In some way, not clearly shown by the evidence but admitted by the plaintiff, he borrowed seventy-five hundred dollars on that policy. What became of that money is not shown in the record.

Although some of the charges the plaintiff made as to defendant's conduct, and relied upon by him to establish his right to a divorce, relate to matters as early as 1936, it appears that he valued the defendant highly as late as 1939; for he himself volunteered the following testimony: "I was suing my mother-in-law, Mrs. E. C. Burke, for $50,000 for alienation of affections. That was in '39, as I recall."

It is also in evidence, and undisputed, that Mr. Heney, Sr., set up a fund of one thousand dollars for Barbara Anne, half of which the plaintiff got possession of and used for his own purposes.

Furthermore, the senior Heneys, from the date of the marriage of the parties, gave the plaintiff two hundred dol-

lars a month to support his family. When the plaintiff could not be found, which was often, the check went directly to the defendant. After the death of Mr. Heney, Sr., his wife, Katherine L. Heney, sent the defendant one hundred fifty dollars every month until February, 1943, and after that and until her death, the sum of one hundred twenty-five dollars per month.

The plaintiff attempted to practice law in a desultory way, but it seems that, due to his habit of disappearing for indefinite periods without notice or warning, the venture did not prosper. His earnings were negligible, apparently not sufficient to pay his office expenses. He was in the army for a few months, after which he worked at Boeing's, but he testified that, on account of frequent absences due to recurrent illnesses, his earnings were only about seventy-five dollars per month. The comment of the trial judge, made during the discussion at the close of the evidence in the case, that the plaintiff never earned anything net, was substantially correct.

No court can decree a division of the property in this case without taking into consideration the will of Katherine L. Heney, which sets up trusts in favor of all of the parties involved herein, that is, the plaintiff, the defendant, and their daughter, Barbara Anne. It is a very long document, consisting of the will proper and four codicils. Unfortunately, we feel compelled to quote at length from this instrument, lest if we attempt to state its provisions in narrative form, some future litigant may seize upon the language used as a judicial construction of the will. Nothing we now say, or have said, or may say at any other point in this opinion, is to be taken as a construction of the provisions of the will or its codicils, or as any kind of a direction to the trustees therein named. We intend merely to state what its provisions are.

The will was executed on June 9, 1939. Following two bequests with which we are not here concerned, the instrument proceeds as follows:

"FOURTH: I give, devise and bequeath to my Trustees

hereinafter named the sum of Two Thousand ($2,000) Dollars in Trust, nevertheless, for the use and benefit of my granddaughter, Barbara Anne Heney, to be held and invested by my said Trustees under the powers hereinafter set forth, until my granddaughter's twenty-first birthday, at which time my said Trustees shall pay such sum, together with any and all increments thereon to my said granddaughter; Provided, however, that in the event my granddaughter shall die prior to her twenty-first birthday, then this bequest shall revert to and become a part of the residue of my trust estate herein created."

The next paragraph devises and bequeaths the rest and residue of her estate to three trustees therein named, and in subparagraphs thereunder proceeds as follows:

"1. Said Trustees shall, out of said trust estate, pay to my son, Patrick A. Heney, Jr., so long as he shall live, the sum of Two Hundred Fifty ($250.00) Dollars per month; provided, however, that said monthly payment of $250.00 is intended by me for the use of my son and his family, now consisting of himself, his wife, Bernice, and daughter, Barbara Anne, and in the event my said son shall, in the judgment of my Trustee fail properly to provide for his wife Bernice, and his child or children, or shall fail and refuse to live with and provide a home for them, then in that event said Trustees shall have the power and duty to allocate said monthly sum of $250.00 in such portions as they shall deem just and proper for the support, maintenance or education of said wife, child or children, and the balance for the use of my said son.

"2. It is my purpose in creating this trust to provide for my son, Patrick A. Heney, Jr., and for the maintenance, support or education of his wife, Bernice, and his child or children, and to that end I direct that my said Trustees shall have the authority to pay such additional sum as may be necessary in case of sickness, need or emergency, or under such other contingencies as, in the opinion of the Trustees, justify such additional expenditures for the care of my said son, Patrick A. Heney, Jr., his wife, Bernice, and the child or children of my said son, having in mind at all times the requirements and future needs of the beneficiaries under this trust and the amount of my estate.

"3. Upon the death of my said son, Patrick A. Heney, Jr., said trust estate shall be paid and used as follows:

"(a) If my son's wife, Bernice, survives him, then my

Trustees shall pay to said wife, Bernice, Two Hundred Fifty ($250.00) Dollars per month so long as she shall live, for the support of herself and the support, maintenance and education of the child or children of my said son during their minority, and thereafter for the support of said wife; provided, however, that in the event the said wife, Bernice, shall remarry, then I will and direct that my said Trustees pay said monthly sum of $250.00 for the use and benefit of the child or children of my said son so long as any such child or children shall live.

"(b) If my son's wife Bernice predeceased my said son, then my said Trustees shall pay said monthly sum of $250.00 for the use and benefit of the child or children surviving my said son so long as said child or children shall live."

Paragraph 4 under this division of the will provides for the distribution of any assets which may be on hand at the dissolution of the trust.

Paragraphs 5, 6, and 7 are as follows:

"5. I will and direct that my said Trustees shall grant to my son Patrick A. Heney, Jr., the right to occupy my home located at 1618 East Aloha, Seattle, Washington, together with all furniture and furnishings therein, as a home for himself and his family so long as he shall live; provided that should my son elect to abandon or remove from said family home, my said Trustees shall have the authority to sell said property.

"6. I authorize and empower my said Trustees, and the survivor of them, to do all acts and things in relation to the trust property and estate, not inconsistent with the terms and provisions of the trust, to sell, convey, exchange or encumber the same, or any part or parts thereof, and for such consideration or considerations as they shall deem expedient, reinvesting and holding the proceeds of all sales, for the same purposes and upon the same trust for and upon which the property or estate sold was holden, to lease any and all of said real estate for such terms of time as they shall think proper, and to make, execute and deliver all deeds, leases and other instruments that may be proper in the execution of the trust and powers herein conferred upon them.

"7. No beneficiary hereunder shall have the power to anticipate, alienate or incumber his or her interest in the trust estate or income therefrom."

The material part of the first codicil, executed on January 5, 1940, is as follows:

"Paragraph 1 of Section FIFTH is changed to read as follows:

"Said Trustees shall, out of said trust estate, pay to my son Patrick A. Heney, Jr., so long as he shall live, the sum of Three Hundred Dollars ($300.00) per month; provided, however, that said monthly payment of $300.00 is intended by me for the use of my son and his family, now consisting of himself, his wife Bernice, and daughter Barbara Anne, and in the event my said son shall, in the judgment of my Trustees, fail properly to provide for his wife Bernice, and his child or children, or shall fail and refuse to live with and provide a home for them, then in that event, said Trustees shall have the power and duty to allocate said monthly sum of $300.00 in such portions as they shall deem just and proper for the support, maintenance, or education of said wife, child or children, and the balance for the use of my said son. And during the life of said trust, the said Trustees shall pay out of said trust fund the taxes upon the home of my said son."

The material part of the second codicil, executed on August 17, 1940, reads as follows:

"It is my will and I hereby direct that my Trustees named in my Last Will and Testament shall pay, in addition to the $300.00 per month provided for my son, PATRICK A. HENEY, JR., under the provisions of the first codicil to my Last Will and Testament, the further sum of Five Thousand Dollars ($5000.00) at the expiration of one year after the date of my death, provided that, in the judgment of my said Trustees, my said son has evidenced such industrious propensities and sober character as would justify my said Trustees in believing that my said son could hold and take care of such portion of said trust estate; and provided, further, that in the event my said Trustees decide to deliver to my said son said sum of $5000.00, they shall continue to pay him the monthly payments of $300.00 per month under the same terms and conditions as set forth in my Last Will and Testament and the said first codicil to my Last Will and Testament.

"At the expiration of six years from and after my death, my said Trustees may pay over to my son a further sum of Five Thousand Dollars ($5000.00), if in the judgment of my said Trustees my son shall have evidenced such industrious

propensities and sober character as would justify said Trustees in believing that my said son would hold and take care of such sum.

"At the expiration of eleven years from and after my death, my said Trustees may, in their discretion and under the same conditions as contained in the paragraph immediately preceding, pay over to my said son one-third of the then remaining corpus of the trust estate, and in making their decision as to the payment of said sum, my Trustees shall take into consideration the conduct of my son and the use to which he has put such sums as the Trustees may have heretofore given him; it being my intention that my said son shall receive only portions of the corpus of said trust fund in the manner herein provided, and only when he has demonstrated an ability and determination to care for and preserve his property for himself, his wife and his children.

"In the event my said Trustees do pay over said one-third portion of said trust fund to my son, then and thereafter they shall pay to my said son the sum of $150.00 per month for a period of five years and at the expiration of said five years, said Trustees may, in their discretion, and under the conditions, circumstances and limitations hereinabove provided for, set over to my said son one-half of the then remaining corpus of said trust fund, and in the event they make such payment, the monthly payments to my said son shall be reduced to $75.00 per month for another period of five years, and at the end of said five years, my said Trustees may, if in their discretion it is advisable so to do, having in mind the circumstances, conditions and limitations hereinable set forth, pay over the remaining balance of the trust fund to my said son.

"In the event my said son does not meet the conditions required for the payment to him of any payment of the corpus of the trust fund, and my Trustees withhold said funds from him, then and in that event they shall continue to pay him the sum of $300.00 per month, as long as he shall live, provided, however, in the event my said son shall have failed to demonstrate such qualities within the time hereinabove provided, but later does demonstrate such qualities to the satisfaction of my Trustees, then my said Trustees may pay over to my said son the portion of the trust estate as I have above provided.

"Upon the death of my said son, Patrick A. Heney, Jr., such portion of the trust fund remaining shall be paid and used as follows:

"(a) If my son's wife, BERNICE, survives him, then my

Trustees shall pay to said wife Bernice $250.00 per month so long as she shall live, for the support of herself and the support, maintenance and education of the child or children of my said son during their minority and thereafter for the support of said wife; provided, however, that in the event of the death of said wife, Bernice, after the death of my son or in the event of her remarriage, I will and direct that my said Trustees shall pay $125.00 per month for the use and benefit of each child of my son during the minority of said child or children, and until the youngest of said children shall have reached the age of twenty-five years; provided, however, that at all times my said Trustees shall have the right to reduce the monthly payments herein provided for said children if in their judgment it seems for the best interests of said child or children and the preservation of said trust estate.

"(b) In the event of the death of said wife, Bernice, after the death of my son or in the event of her remarriage, and upon the youngest of the children of my said son reaching the age of twenty-five years, my said Trustees shall distribute the remainder of said trust estate share and share alike to said children.

"(c) In the event of my son, my son's wife Bernice, and the child or children of my son shall die prior to the termination of the trust herein provided, then and in that event I direct that such portion of the trust estate as may remain shall be distributed in accordance with Paragraph 4 of my Last Will and Testament."

The material part of the third codicil, executed on September 18, 1940, reads as follows:

"I give, bequeath and devise unto my son PATRICK A. HENEY, JR., lots thirteen (13) and fourteen (14), Block eighteen (18) of Capital Hill Addition No. Two to the city of Seattle in the County of King, State of Washington, including the home and its contents."

The material part of the fourth codicil, executed on December 9, 1940, reads as follows:

"I give and bequeath unto my son, PATRICK A. HENEY, JR., the sum of One Thousand Dollars ($1,000.00) to be paid to him upon my death, or as soon thereafter as it is reasonable to do so within the discretion of my Executors."

Obviously, the trial court was faced with difficulties in making a division of the property in this case. The provi-

sion in the will of Katherine L. Heney that Barbara Anne Heney should receive two thousand dollars, and the increment thereof, when and if she should become twenty-one years of age, is so clear and definite as not to admit of construction. That sum is left as a bequest directly to the trustees for her benefit, to be carved out of the property of the estate and set aside prior to the establishment of the residual trust. But to go beyond that and inquire what further benefits the appellant and her daughter will probably receive from the residual trust set up in Katherine L. Heney's will, would be mere speculation as to how some other court, with all the relevant facts before it, would construe the will and its codicils.

In setting out the property division as made by the trial court, we informally identify the different items, in one way or another, to avoid the use of long legal descriptions. The values given as to each item are taken directly from the court's findings of fact. To the defendant, the court awarded:

The 1305 4th Avenue West home in Seattle, deeded to the plaintiff at the time of the marriage of the parties, but claimed by the defendant to have been intended as a wedding present to both, $8,500; household furniture, fixtures, and equipment at 1305 4th Avenue West, Seattle; a large number of these articles were wedding presents, $2,000; an undivided ⅛ interest in certain acreage on Vashon Island; the ⅛ being the separate property of the plaintiff and valued at $1,118.75; 80 shares of the Bankers Union Life Insurance Company; these were the separate property of the defendant, $760.

In addition to the above, the court awarded the defendant the following property which she received from her father's estate:

An undivided one-half interest in the Telephone Building at Kirkland, Washington, the whole being valued at $2,500, and, therefore, the half interest at $1,250; ten shares of Seattle-1st National Bank, $450; twenty-four shares of Superior Portland Cement Company, $1,248; six shares of Title Insurance Company, $450; bank account, $1,000; used Pack-

ard automobile claimed by appellant as being her mother's —no valuation made; total valuation of all property awarded to defendant, $16,776.75.

The court awarded to plaintiff:

The Heney home, 1618 E. Aloha Street, Seattle, devised to plaintiff in his mother's will, net value, $14,250; Canada Life Assurance Company policy No. 236910 on plaintiff's life, amount, $25,000, on which there is a policy loan for $7,500, cash surrender value, $3,550; plaintiff's separate property at Lake Lucerne, $2,500; Packard automobile, value not given; total valuation of all property awarded to plaintiff, $20,300.

The plaintiff was, however, ordered to pay the defendant seventy-five dollars per month for the remainder of her natural life or until she remarries, and the additional sum of seventy-five dollars per month for the support of Barbara Anne until she attains the age of twenty-one years; but to this is added the following proviso:

". . . provided that, any and all sums which the defendant, Bernice B. Heney, receives from the trustees of the estate of Katherine L. Heney, deceased mother of the plaintiff, shall be credited to the aforementioned allowances."

We are wholly unable to understand some of the contentions made in appellant's reply brief. It is said, on page 10:

"We compute the award to respondent as follows:

| | | |
|---|---|---|
| "Estimated Net Value of Estate of Katherine L. Heney.... | | $95,000.00 |
| Including home at 1618 E. Aloha, valued at $15,000 | | |
| "Cash Bequest ....................................... | | 1,000.00 |
| "Lake Lucerne Property.............................. | | 2,500.00 |
| "Life Insurance Policy, paid up................ | $25,000 | |
| Less policy loan...................... | 7,500 | 17,500.00 |
| "Total Property Award to Mr. Heney.................. | | $116,000.00" |

And again, on page 11:

"Appellant's total property award was $14,878.75. Respondent's total property award was $116,000.00. The proportion is roughly 1 to 8, instead of a fair proportion of one to one which one might normally expect, . . ."

The first figure in the last quotation is nearly two thousand dollars too small, and the second figure is many, many thousands too large. The Katherine L. Heney estate was appraised at $103,478.87. Clearly, all that the plaintiff can be certain to receive under the will is the Heney home, devised to him in the third codicil, and the one thousand dollar bequest in the fourth codicil. The amount which he may receive through the monthly payment of three hundred dollars, provided for in the first codicil and intended for the use of himself and his family, is uncertain. Whether or not he will receive five thousand dollars after his mother's death, a further sum of five thousand dollars six years thereafter, and the third of the corpus of the trust eleven years thereafter, etc., is wholly left to the discretion of the trustees. In fact, it would seem highly probable that the trustees will find difficulty in making the three hundred dollars monthly payments without resorting to the corpus of the trust estate. There is a one thousand dollar straight bequest to one devisee, a one hundred dollar bequest to another, a two thousand dollar bequest to Barbara Anne, a one thousand dollar bequest to the plaintiff, and the home valued at fifteen thousand dollars. The sum of these is $19,100, which reduces the estate to $84,378.87. Inheritance and other taxes, attorney's fee, and other expenses of administration will probably reduce this amount to seventy-five thousand dollars, and perhaps even less. The monthly payments provided for amount to thirty-six hundred dollars a year, which is but slightly less than the income on seventy-five thousand dollars at five per cent, which at the present time is a large and probably unobtainable return on trust funds.

The respondent contends that the appellant is in fact left in possession of property of the value of $37,657.75, instead of $16,776.75, as we have above computed the amount from the findings of fact and judgment. Respondent's contention is based upon the claim that the appellant received, or is entitled to receive, from the estate of her father, E. C. Burke, the sum of $14,779, as purported to be shown by certain exhibits consisting of copies of instruments filed in that estate.

The parties do not agree as to what these instruments purport to prove, nor are we able to determine what they prove. We note that an attorney, whose firm participated in the probate of the E. C. Burke estate, was subpoenaed by the plaintiff and attended the trial but was not put on the witness stand. After the purported settlement papers were introduced, the plaintiff's attorneys, in discussing the matter with the court, said, among other things:

"MR. HEIDEMAN: This says to pay to the defendant. It says—in order to settle their differences, the mother [Mrs. Burke] is going to pay her $14,700 and some odd dollars, and it is in cash. It doesn't say cash but it says, 'to pay her $14,700,' and some odd dollars. Now, in fairness to the defendant, for some reason,—I have been able to ascertain since but I can't make it a part of the record—this settlement wasn't carried out. There was another law suit. This Burke family fought between themselves over this estate. There were several lawsuits over this estate."

There was enough shown to warrant the court in supplementing finding No. 7 listing the property the defendant had received from the Burke estate, by adding in longhand: "The court is not satisfied that the defendant made a full disclosure of her property." But there is no evidence from which it can be held that defendant did not in fact make a full disclosure, and even if it could be so found, we could not determine what amount was undisclosed. Whether this matter in any way influenced the trial court's division of the property, we do not know. There is nothing to indicate that it did. In any event, it will not influence our decision in the matter, for the reasons above mentioned.

The appellant vigorously contends that the Heney home, left to the respondent by his mother, should be taken from respondent and awarded to her. It is admitted that the respondent intends to sell that property for fifteen thousand dollars cash, and it is argued that he will dissipate the proceeds within a year and thus disable himself from paying the monthly sums he has been ordered to pay for the support of appellant and her daughter. That there is grave danger that this may happen, must be conceded. Respondent's irresponsibility over a long period of years is

thoroughly proven in the evidence. His mother's will and the codicils thereto show, from beginning to end, that she realized his irresponsibility, although she never lost hope of his possible regeneration.

It is also strongly urged, and with much reason, that appellant cannot operate her home and support and educate her daughter on one hundred fifty dollars a month, even if the respondent makes the payments as ordered.

On the other side of the picture, it appears that the respondent has very little property other than the Heney home, and that he has accepted the responsibility of caring for his two children born out of wedlock. Whatever may be said, or thought and left unsaid, about that situation, it must first of all be remembered that the children are wholly innocent. Furthermore, as pointed out in *Hancock v. Hancock,* 55 Fla. 680, 45 So. 1020, 15 L. R. A. (N. S.) 670, a divorce may well be regarded as a civil suit between three distinct parties, the plaintiff, the defendant, and the state. When minor children are involved, the state's interest is that, in so far as is possible, provision shall be made for their support, education, and training, to the end that they may grow up to be worthy and useful citizens. It, therefore, follows that there should be no discrimination in this respect between children born out of wedlock and children legitimately born. The public interest is exactly the same in either case.

We are not disposed to modify the decree appealed from, except in the following particulars: We think the appellant should, in addition to what she has been awarded, receive the avails of the Canada Life Assurance policy. As we cannot, from the policy itself or from anything else in the record, determine its exact status, and as the respondent may wish to keep the policy in force, we are not able to make a specific order as to this matter; but it is our intent that appellant shall receive an amount equal to its surrender value, as found by the court at the trial, to wit, $3,550. The method of accomplishing that result, we leave to the trial court and the attorneys for the respective parties.

We further direct that the proviso which follows

the order in the decree appealed from, that respondent pay the appellant seventy-five dollars a month for her support, and a like sum for the support and maintenance of her daughter, be stricken from the decree. This proviso reads as follows:

" . . . provided that, any and all sums which the defendant, Bernice B. Heney, receives from the trustee of the estate of Katherine L. Heney, deceased mother of the plaintiff, shall be credited to the aforementioned allowances."

We see no special reason for this proviso, and if the trustees should exercise the power given in the will to pay additional sums for the maintenance of the appellant and her daughter,

" . . . as may be necessary in case of sickness, need or emergency, or under such other contingencies as, in the opinion of the Trustees, justify such additional expenditures, . . ."

the proviso would enable the respondent to avoid the payment of obligations which he alone should discharge.

Except as above modified, the decree appealed from will stand affirmed.

BEALS, BLAKE, SIMPSON, and MALLERY, JJ., concur.