Justine Wise Polish, J.
The wrongful death statute of Louisiana was interpreted by the District Court to hold that the right of surviving children was restricted to legitimate children.*
[1] On the ground that the right to recover was based on ‘ ‘ morals and general welfare because it discourages bringing *343 children into the world out of wedlock,” this decision was affirmed by the 'Court of Appeals.[2] Certiorari was denied by the Supreme Court of Louisiana[3] and appeal was taken to the United States .Supreme Court, where probable jurisdiction was noted.[4]
On May 20, 1968 the United States Supreme Court issued its opinion reversing the dismissal of the action taken on behalf of the children for the wrongful death of their mother.[5] 6In the opinion of the court, Justice Douglas set forth as the premise on which the decision was based that .(p. 70) “ illegitimate children are not ‘ nonpersons ’ * * * [but] are clearly ‘ persons ’ within the meaning of the Equal Protection Clause of the Fourteenth Amendment. ’ ’ The opinion noted that while the United States Supreme Court had given great latitude to the Legislatures in making classifications, it had been ‘ ‘ extremely sensitive when it comes to basic civil .rights * * * and [we] have not hesitated to strike down an invidious classification ”.[6] The opinion proceeds: 1 ‘ Why should the illegitimate child be denied rights merely because of his birth out of wedlock? He certainly is subject to all the responsibilities of a citizen, including the payment of taxes and conscription under the Selective Service Act. How under our constitutional regime can he be denied correlative rights which other citizens enjoy?”
The court decided that the classification excluding illegitimate children constituted discriminatory action.
In a companion case a mother had brought a wrongful death action to recover for the death of her son born out of wedlock in an automobile accident in Louisiana. In the opinion delivered by Justice Douglas, the court reviewed a series of statutes under which Louisiana had imposed sanctions against illegitimacy.[7] The court rejected the argument that (p. 75) “ since the legislature is dealing with ‘ sin ’, it can deal with it selectively and is not compelled to adopt comprehensive or even consistent measures.” The court held (p. 76) that “ where the *344 claimant is plainly the mother, the State denies equal protection of the laws to withhold relief merely because the child, wrongfully killed, was born to her out of wedlock. ’ ’
These two decisions must have great impact on the interpretation of State statutes, which in various ways and to varying degrees continue to create ‘ ‘ invidious ’ ’ distinctions against children born out of wedlock in many areas. It is true that such ‘ ‘ invidious ’ ’ distinctions have been diminished by many State Legislatures during the past few decades. However, the extent to which they have been deprived and continue to deprive children of equal protection continues to impose one more discriminatory burden on children born out of wedlock. The steady increase in the percentage of such children adds to the extent of their effect upon the lives of children.
The history of the legislation in New York State, concerning the right to support from the fathers of children born out of wedlock, provides an example of the diminishing but continuing discriminatory treatment of such children. The imposition of some obligation on the natural father was first imposed in New York under a criminal statute and subsequently under the Domestic Relations Court Act of the City of New York.[8] Enforced for long years under a quasi-criminal proceeding, orders for support were niggardly and geared to relieving the taxpayer rather than to providing adequately for the support of a child.
In 1962, when the unified Family Court Act for the State of New York took effect it transferred jurisdiction of filiation proceedings from the Court of Special Sessions to the Family Court.[9] While generally regarded as a progressive statute, the new law largely maintained the discriminatory features of the preceding statutes in regard to the rights of children born out of wedlock:
1. Under the Family Court Act, the law continues to impose a Statute of Limitations in favor of the father of children born out of wedlock.[10]
*345 2. The prima facie presumption that the father of a child born in wedlock shall have sufficient means to support his minor children,[11] is omitted from those sections of the act dealing with support of children born out of wedlock.
3. The father of a minor child, born in wedlock, is held chargeable with the support of his minor child and ‘ ‘ if possessed of sufficient means or able to earn such means, may be required to pay for his support a fair and reasonable sum according to his means, as the court may determine.”[12] In contrast for a child born out of wedlock the law provides that “ each parent * * * is pa]qe for the necessary support and education of the child and for the child’s funeral expenses.’’[13]
4. For the child born in wedlock, the statute provides that “ The court has continuing jurisdiction * * * until its judgment is completely satisfied and may modify, set aside or vacate any order issued in the course of the proceeding.”[14] No comparable provision for continuing jurisdiction is set forth in article 5 concerning children born out of wedlock.
5. The statute defining the right to support of children born out of wedlock authorizes agreements or compromises made by the mother or authorized persons, and sets forth that they become binding both on the mother and child when approved by the court, and that they bar other remedies for the support and education of the child.[15]
*346 6. Such agreements or compromises have been held to bar subsequent actions to determine paternity and so may deprive the child of his right to inheritance.[16]
In sharp contrast the rights of a child born in wedlock have been protected against agreements and even judgments that prove improvident so far as a child’s rights are concerned.[17]
In the light of the decisions of the United States Supreme Court on May 20,1968, State statutes which discriminate against children on the basis of a classification as to whether they were born in or out of wedlock must be held to violate the Equal Protection Clause of the Constitution. Certainly there is no area in which such statutes should be more carefully scrutinized than where the support, the care, and the education of a child depend on their interpretation.
In the instant case there is no question of paternity. Both petitioner and respondent have appeared with counsel and the respondent has acknowledged paternity in open court. The sole question before this court was whether the agreement approved by the parents and their counsel and submitted to this court on June 4, 1968 adequately protects the child.
The proposed agreement undertook that:
1. The respondent shall repay the petitioner $1,950 for expenses incurred in connection with her pregnancy, confinement and recovery.
2. The respondent shall pay the petitioner $90 per week for the care and education of the child until he reaches 21, marries, dies, becomes emancipated or enters the military service.
3. The respondent shall pay an additional sum of $25 weekly commencing as of the child’s 12th birthday and continuing until he is 21 to be used for his college education.
4. The respondent shall maintain certain substantial life insurance policies until the child attains 21 years of age.
*347 5. Liberal provisions are made for visitation rights and the agreement provides that if the petitioner unreasonably withholds such rights, the respondent shall be entitled to reduce the support by 50%.
6. If the annual gross income of the respondent were substantially reduced, the respondent would be entitled to petition the Family Court for revision or modification of the payments of support for the child.
Under past procedures such an agreement would in all likelihood have been approved by the court as adequate to meet the statutory requirements for a child born out of wedlock. In the light of the recent Supreme Court decisions, there were, however, aspects of the agreement that required modification prior to its being approved and entered as an order of this court. If children born out of wedlock are no longer to be burdened by invidious classifications as compared to children born in wedlock, the child must be held to be entitled to ‘ ‘ fair and reasonable support based on the father’s means, as the court may determine.” No agreement should therefore be approved without evidence of the father’s current means. The proposed agreement allowed for review and modification by this court-only if the father’s gross income was substantially decreased. It did not allow for review and modification if the father’s gross income was substantially increased.
After indicating the two areas that raised questions the court granted an adjournment for both parties to review the proposed agreement in the light of the recent decisions of the United States Supreme Court. On June 12, 1968 both parties appeared with counsel and the proposed agreement was modified to stipulate that the agreement for support was based on gross earnings of $45,000 a year. The agreement was further modified by stipulation to provide that this court should have continuing jurisdiction to review the amount of support if the respondent’s income was substantially changed.
Agreement as modified by stipulation was approved and was incorporated into an order effective June 12, 1968. Order of $90 per week for the support of the child is entered payable through this court, first payment June 21, 1968.

 Names used herein are fictitious for purposes of publication.

. See La. Civ. Code, Art. 2315.

. Levy v. Louisiana (192 So. 2d 193, 195 [La.]).

. 250 La. 25.

. U. S. Code, tit. 28, § 1257, subd. (2).

. 391 U. S. 68.

. P. 71.

. Glona v. American Guar. & Liab. Ins. Co. (391 U. S. 73). See, also, dissent by Justices Harlan, Black and Stewart. Emphasis is placed on Lord Campbell’s Act, 9 and 10 Vict. c. 93 (1846) and continuing statutes patterned on this act which distinguish between legitimate and illegitimate children. The dissent holds that the State may properly define classes in terms of their legal rather than biological relationships and can properly demand that family relationships be formalized.

. N. Y. City Crim. Ct. Act, Art. V, § 60 el seq.; Domestic Relations Court Act of the City of N. Y., § 101 (L. 1933, ch. 482, as amd. by L. 1960, ch. 720, § 1, eff. April 21, 1960).

. L. 1962, ch. 686, art. 5.

. § 517.

. § 437.

. § 413.

. § 513.

. § 451, section 548 states that the provisions of part 5 of article 4 of this act apply when an order of support is issued under this article.

. Under part 5 of article 4 section 451 states that: “ The court has continuing jurisdiction over any support proceeding brought under this article until its judgment is completely satisfied and may modify, set aside or vacate any order issued in the course of the proceeding.” The rest of part 5 deals with rules of court (§ 452), warrant on failure to obey order (§ 453), powers on failure to obey orders (§ 454), commitment (§ 455), probation (§ 456), writ of seizure on failure to obey support order (§ 457), cancellation of arrears (§ 458), and order with respect to public employee (§ 459).
While it may be argued that section 451 by reference provides for continuing jurisdiction, the continuation of subdivision (c) of section 516 providing that the complete performance of an agreement or compromise made by the mother or by some authorized person, when approved by the court, bars other remedies of the mother or child for the support and education of the child throws doubt on such interpretation and requires corrective legislative action.

. Roe v. Doe (51 Misc 2d 875, 884-885). The court held that compliance with an agreement and compromise made by a mother served as a “ complete bar” to a subsequent effort to secure a trial on the question of paternity. “ The court is mindful of the importance of an order of filiation for the child in question. She, the innocent victim, will be the one to lose the most by an adverse decision on the petitioner’s motion. If she does not get an order of filiation, she will not be able, among other things, to inherit from the respondent, to which she would be entitled under the recent amendment of section 83-a of the Decedent Estate Law, in effect March 1, 1966 * !f * Any injustice that may result from the application of the law is up to the Legislature to cure.” (Cf. Matter of ABC v. XYZ, 50 Misc 2d 792.)

. Family Ct. Act, §§ 461, 466.