[No. 42291.  En Banc.  July 6, 1972.]

THE STATE OF WASHINGTON, *Appellant*, v. ANTHONY BOWEN, *Respondent*.

*Robert E. Schillberg, Prosecuting Attorney,* and *Allen J. Hendricks, Deputy,* for appellant.

*Jordan & Lambert,* by *Richard S. Lambert,* for respondent.

ROSELLINI, J.—An unmarried mother entered in an agreement whereby she waived and renounced any claim for child support which she might have had against the man alleged to be the father of the child, the consideration for which was the payment of the lump sum of $2,100. We are

asked to decide whether that agreement can be set up as a complete defense to a later filiation proceeding.

The filiation statute, RCW 26.24, provides a procedure whereby an unmarried woman may complain to a justice of the peace, accusing under oath "a person with being the father of [her] child." (RCW 26.24.010.) It provides that the justice shall issue a warrant forthwith and cause the person to be brought before him, and if, upon a hearing, sufficient cause appears, that the person shall be bound over to superior court for trial. (RCW 26.24.020.) RCW 26.24.030 provides:

> Such proceeding shall be entitled in the name of the state of Washington, and shall be prosecuted in both justice court and the superior court by the prosecuting attorney of the county where brought, and shall not be dismissed except by such prosecuting attorney upon a showing to the court that the provisions herein contemplated to be made for the maintenance, care, education and support of the child have been made.

If the "issue be found against the accused," he shall be "charged by the order and judgment of the court to pay a sum to be therein specified, during each year of the life of such child, until such child shall have reached the age of sixteen years, for the care, education and support of such child," together with "the expenses of the mother incurred during her sickness and confinement" and the cost of the suit. The accused shall also be required to give bond, payable to the people of the state of Washington, for the payment of the sums specified in the judgment and order. (RCW 26.24.090.)

RCW 26.24.100 provides that, in addition to the proceedings for enforcing the support of the child provided for in that chapter, the accused may be prosecuted in any criminal proceeding provided for by "the laws of the state of Washington, relating to the support of minor children by parents or other persons upon whom such children may be dependent for care, education or support."

RCW 26.24.130 provides that the judgment money, when

received by the clerk of the court, shall be paid to the mother or other guardian of the child and used for its support, care and education as directed by the court.

There are provisions for precedure in case of default (RCW 26.24.140), for commitment for contempt for non-payment (RCW 26.24.150), a 2-year statute of limitations (RCW 26.24.160), a provision that an action shall not abate on the death of the mother (RCW 26.24.170), or upon the death of the child (RCW 26.24.180), and for award of custody to the mother or other suitable person (RCW 26.24.190). Also, RCW 26.24.080 provides that if the judgment or verdict is that the accused is not the father of the child, he shall be discharged, but provides that no court costs shall be required of the complainant for the proceeding in either the justice court or superior court.

It is settled that this proceeding, in spite of the fact that it is prosecuted in the name of the state and contemplates a commitment to jail, if necessary, to enforce compliance with the court's orders, is civil in nature. *State v. Schimschal,* 73 Wn.2d 141, 437 P.2d 169 (1968).[1]

This statute was enacted for the benefit of the child, not the mother. Its purpose is to establish the responsibility of the father to contribute to the care, support and education of the child. *State v. Coffey,* 77 Wn.2d 630, 465 P.2d 665 (1970); *State v. Kline, supra; State v. Schimschal, supra.*

There are a number of other statutes under which the prosecuting attorney is authorized to represent the state's interest in proceedings to enforce the parental duty of support. These are set forth in *State v. Russell,* 68 Wn.2d 748, 415 P.2d 503 (1966), and include the divorce, annulment and separate maintenance statute, RCW 26.08 (and specifically RCW 26.08.080), the family desertion statute, RCW 26.20, and the uniform reciprocal enforcement of support statute, RCW 26.21.

---

[1] *See State v. Kline,* 69 Wn.2d 107, 417 P.2d 348 (1966), wherein this court had discussed the "criminal" aspects of the filiation statute but in that case had found it unnecessary to decide whether the proceeding was best described as civil or criminal.

As we said in that case, a filiation proceeding is not the only method by which a putative unmarried father may be made responsible for the support of his children. Rather this may be proven in every cause where pertinent, regardless of the existence of the filiation statute. Read in the light of these other statutes imposing upon the prosecuting attorney the duty of enforcing support by parents, it would appear that an important purpose of the filiation statute was to encourage the mother of an illegitimate child promptly to bring before the court for determination the question of the child's paternity. The provision for payment of the mother's expenses of pregnancy and delivery, as well as the provision exonerating her from liability for costs if her allegations are not established indicate a legislative intent to encourage the institution of such proceedings.

The 2-year statute of limitations is designed to secure an early determination as to the identity of the father, but it does not signify a legislative intent that a putative father should escape liability for child support if a filiation proceeding is not instituted within the 2-year period, inasmuch as there is no similar limitation upon the time within which the prosecutor can bring an action to enforce support under RCW 26.20.

As this court said in *State v. Russell, supra,* by the language of the statutes, by the policy of the law as declared by this court and by the demonstrated concern of this state in the protection of children, we do not recognize, except in divorce causes, that the existence or nonexistence of the marital relationship is a necessity to proceeding against a parent or any other person who has a duty to support a child or ward. That duty does not expire at the end of the second year of a child's life simply because his mother has failed to bring an action to establish the identity of his father.

Having in mind, then, the purpose of the filiation statute, as well as other statutes giving to the prosecutor the right and duty to enforce parental support of children, we turn to the facts of the case before us.

In the superior court, a summary judgment for the defendant was granted. The agreed statement of facts shows that in July 1968, 3 months after the birth of a child, Joyce E. Barry went to the prosecutor of Snohomish County and stated that the defendant was the father of her child. No complaint was filed in justice court, but a deputy prosecutor contacted the defendant and told him of the accusation. The possibility of a settlement was mentioned. Thereafter, the defendant secured the services of an attorney, who obtained the mother's signature upon a "Receipt and Agreement" whereby she acknowledged the receipt of $2,100 and waived and renounced "now and forever" any and all claim which she may have had against the defendant, "whether criminal or civil," for child support or any other expenses in connection with the birth of the child. The complainant called the prosecutor and told him that she did not wish to pursue the filiation proceeding and the matter was dropped.

At the time she signed this agreement, the only source of income of the complainant was $42 per week received as unemployment compensation. When her right to receive such compensation expired, she was entirely dependent upon her parents for support of herself and her child, except that she was receiving food stamps. Just before the expiration of the 2-year statute of limitations provided in RCW 26.24.160, she again went to see the prosecutor and expressed a desire to proceed with the filiation proceeding. She signed a complaint and this action was instituted. At the time of trial, the complainant was still dependent upon her parents for support of herself and her child but was attending college, studying for a teaching certificate.

The "settlement" which the complainant signed in 1968 was not approved by the prosecutor or any court, and no guardian represented the interest of the child in negotiating the settlement. It is conceded that the cost of the child's support during the first 16 years of its life will greatly exceed the amount paid to the complainant. The trial court, upon motion of the defendant for summary judgment, nev-

ertheless held that the agreement precluded the complainant from instituting a filiation proceeding to determine the paternity of the child and establish the obligation to contribute to its support.

It is the theory of the complainant, upon this appeal, that the mother cannot, by contract, deprive her child of the right to be supported by its father, and that it is against the public policy of the state to hold that the mother can, by her own act in signing an agreement, preclude herself from testifying as to the identity of the father.

We believe that this theory is in harmony with the purpose and spirit of the laws of this state pertaining to child support. It is the public policy of the state, as expressed in the cited statutes, that both parents shall be responsible for the financial support of their children. Where the parents are not married, the identity of the father can rarely be established without the testimony of the mother. To allow her to enter into a binding contract not to assert that a particular man is the father, is thus contrary to that policy, if in fact adequate provision is not made for the support of the child.

The filiation statute evinces an intent that, once a mother complains that a certain person is the father of her child, the court shall determine whether he is in fact the father; and if it is found to be the case, shall require him to make a fair contribution to the support of the child. It appears that the legislature had in mind the possibility of a settlement being reached between the complainant and the accused, for it carefully provided that the proceeding should not be dismissed

> except by such prosecuting attorney upon a showing to the court that the provisions herein contemplated to be made for the maintenance, care, education and support of the child have been made.

RCW 26.24.030.

In other words, a settlement may be reached and approved, but it must be one which provides for the expenses of the confinement and for an additional amount which is

equal to that which the court would require the father to pay toward the cost of supporting, maintaining and educating the child.

It is true that, as the respondent points out, this provision by its terms applies only where a filiation proceeding has been instituted. Thus this provision alone is not determinative of the question presented; however, it is in harmony with our conclusion that the legislative intent, as expressed in all of the statutes relating to the support of children, was that the obligation of the father to contribute to such support could not be defeated by an agreement on the part of the mother not to assert a claim against him.

This court has held that parents of an illegitimate child may enter into a binding agreement for the support of that child. *Peterson v. Eritsland*, 69 Wn.2d 588, 419 P.2d 332 (1966). We said in that case that any provision or obligation for or to the child or its guardian "beyond bare legal care and maintenance" will be sufficient consideration to sustain the contract.[2] In other words, if the alleged father obtains a release from the mother upon payment of a sum greater than the court would have required him to pay had a filiation proceeding been instituted, the agreement will be binding.[3] The corollary of this rule is that a compromise agreement with the mother cannot be utilized to avoid the

[2] Cases in other jurisdictions are not in accord in their approach to the question whether a claim of this nature can be compromised or upon what constitutes sufficient consideration. Varying statutory provisions, as well as differences in the development of judicial attitudes account for these discrepancies. See *Lump-sum compromise and settlement, or release, of bastardy claim or of bastardy or paternity proceedings*, Annot., 84 A.L.R.2d 524 (1962).

[3] We have held that the support payments provided for in a filiation proceeding can be modified. *State v. Coffey*, 77 Wn.2d 630, 465 P.2d 665 (1970). We are not here called upon to decide and therefore express no opinion upon the question whether a compromise and settlement agreement may be subsequently modified by the court in a proceeding instituted by the prosecutor. It should be noted that the agreement which this court approved in *Peterson v. Eritsland*, 69 Wn.2d 588, 590, 419 P.2d 332 (1966), provided a "sliding and arbitrable scale of support payments pegged to the needs of the respective children and the income of the doctor."

duty of support which the law imposes not only for the benefit of the child but also to place the responsibility for the child's support where it belongs in the first instance— that is, upon the parents—and then to avoid, if possible, the necessity of expending funds of the public for its support.

The holding that a compromise and settlement of such a claim as this cannot be sustained unless the consideration paid is at least as much as the law would require in a filiation proceeding, is necessary not only to give full effect to the legislative intent but to avoid an anomaly which would attend any other interpretation. It is not denied that, if this case is dismissed today, the prosecutor may institute an action tomorrow under the nonsupport statute, RCW 26.20, and it is not suggested that the agreement which the mother signed would preclude her from testifying at such a proceeding. Since this action is prosecuted by the prosecuting attorney, the difference in the two proceedings would be essentially formal. The dismissal of this action would avail the respondent nothing, since the question whether he is in fact the father of the child would still be in doubt and the prosecutor would be entitled, in the nonsupport proceeding, to allege and attempt to prove that he is.

It is suggested by the respondent that the prosecutor was "directly responsible" for the settlement agreement and that he was entitled to rely upon the prosecutor's alleged advice that he attempt a compromise. Since it is not claimed that the terms of the settlement were ever brought to the prosecutor's attention, much less that he approved them, this contention is untenable. We are not faced with the question whether the prosecutor would be foreclosed from taking any further action against the alleged putative father under such circumstances.

We conclude that the agreement entered into between the respondent and the complainant was, upon its face, without sufficient consideration to preclude the subsequent institution of filiation proceedings, and that the action was erroneously dismissed.

The judgment is reversed and the action is remanded for further proceedings consistent with the views expressed herein.

HAMILTON, C.J., FINLEY, HUNTER, HALE, NEILL, STAFFORD, WRIGHT, and UTTER, JJ., concur.