[No. 2075-1.    Division One.    June 3, 1974.]

KAREN ELIZABETH KAUR, *Appellant*, v. CHARANJIT SINGH CHAWLA, *Respondent*.

*Ronald W. Meier,* for appellant.

*Steve Frederickson,* for respondent.

JAMES, J.—This appeal presents a question of first impression in Washington. Does a putative father have a duty to support his illegitimate child which can be judicially

enforced in behalf of the child by other than a filiation proceeding (RCW 26.24) or a criminal nonsupport prosecution (RCW 26.20.030)? Plaintiff's complaint seeking support for her illegitimate minor child was dismissed on the ground that it failed to state a claim upon which relief could be granted. We hold that a putative father does have such a duty and that it can be enforced in a civil action brought in behalf of a minor child by its next friend or guardian ad litem.

Defendant initially points out that no such cause of action existed at common law because an illegitimate child was nullius filius and the putative father owed no duty of support. We need not discuss the exact nature of the common-law obligations which a putative father owed to his illegitimate children or to identify the precise points in time when these obligations changed.[1] It is sufficient here to note that while Washington has denied an *illegitimate* child a common-law right to support from its putative father, *State v. Tieman*, 32 Wash. 294, 73 P. 375 (1903), it has recognized a *legitimate* child's common-law right to support from its parents. *Van Tinker v. Van Tinker*, 38 Wn.2d 390, 391, 229 P.2d 333 (1951); *State v. Williams*, 4 Wn. App. 908, 484 P.2d 1167 (1971). The United States Supreme Court has condemned similar discrimination, statutorily imposed, as being an unconstitutional denial of equal protection.

> [O]nce a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother.

---

[1] *Cf. Heney v. Heney*, 24 Wn.2d 445, 459, 165 P.2d 864 (1946), where it is said that: "When minor children are involved, the state's interest is that, in so far as is possible, provision shall be made for their support, education, and training, to the end that they may grow up to be worthy and useful citizens. It, therefore, follows that there should be no discrimination in this respect between children born out of wedlock and children legitimately born. The public interest is exactly the same in either case."

*Gomez v. Perez*, 409 U.S. 535, 538, 35 L. Ed. 2d 56, 93 S. Ct. 872 (1973). Since Washington, by common law, "posits" a right of *legitimate* children to support by their natural fathers which is as "judicially enforceable" as a statutory right, we conclude that illegitimate children are also entitled to a "judicially enforceable right . . . to needed support from their natural fathers . . ."

In *Gomez*, however, Texas had not chosen to provide illegitimate children with *any* right to support. Defendant argues that by RCW 26.24 and RCW 26.20.030, Washington has provided illegitimate children with two statutory methods of obtaining judicial enforcement of their right to support from their natural fathers and that these remedies are exclusive. He makes several arguments in support of this contention.

█ He first argues that these statutes are in derogation of the common law and, under the rule of strict construction, must be held to provide the exclusive bases for judicial relief. 10 Am. Jur. 2d *Bastards* § 68 (1963). Our Supreme Court rejected a similar argument more than 5 years ago. In *Armijo v. Wesselius*, 73 Wn.2d 716, 440 P.2d 471 (1968), the court was called upon to decide whether the words "child or children" designating beneficiaries in RCW 4.20.020, the wrongful death statute, included illegitimate children. It was argued there that the statute was in derogation of the common law and should be strictly construed. The court expressly rejected the rule of strict construction and, recognizing "a decisive current trend in legislative and decisional law which ignores legitimacy when creating or applying statutes designed to benefit children," held that the statute included "illegitimates." The court observed that:

> The reason for this trend is clear. Society is becoming progressively more aware that children deserve proper care, comfort, and protection even if they are illegitimate. The burden of illegitimacy in purely social relationships should be enough, without society adding unnecessarily to the burden with legal implications having

to do with the care, health and welfare of children. As stated in *In re Woodward's Estate*, [230 Cal. App. 2d 113, 118, 40 Cal. Rptr. 781, 784 (1964)]:

> Modern society shrinks from application of the Old Testament (Exodus 20) commandment "visiting the iniquity of the fathers upon the children. . . ." Rather we accept the more humanitarian view stated by Judge Leon Yankwich, that "there are no illegitimate children, only illegitimate parents."

*Armijo v. Wesselius, supra* at 721. The same considerations persuade us to reject strict construction.

Defendant next contends that the filiation procedures are intended to be the exclusive *civil* remedy to enforce an illegitimate child's right to support. However, in *State v. Russell*, 68 Wn.2d 748, 752, 415 P.2d 503 (1966), it is pointed out that the filiation statute does not provide the only method by which paternity can be established and that a putative father can be made responsible for the support of his children "in every cause where pertinent regardless of the existence of the filiation statutes." Significantly, the statutory filiation procedure does not, by its terms, purport to provide the *exclusive* civil remedy.

Defendant also argues that a legislative intention that the filiation procedure be the exclusive remedy is shown by the "important protections" which the statute provides for those "accused" of being the father of a child born out of wedlock. One of these protections is the requirement that any claim thereunder must be brought within 2 years of birth, RCW 26.24.160. Defendant reasons that this limitation was intended to relieve defendants of the potentially onerous burden of defending against accusations after the passage of many years.

In *State v. Bowen*, 80 Wn.2d 808, 498 P.2d 877 (1972), it is recognized that the filiation statute was designed to encourage an early determination of paternity. In a successful filiation "prosecution," a mother recovers her expenses of pregnancy and delivery, RCW 26.24.090, and in no event does she incur liability for court costs, RCW 26.24.080. In a

suit under a nonstatutory right, the mother may not obtain these benefits. But an intent to induce the mother to institute an early determination of paternity is *not* an intent to proscribe any later determination. As *Bowen* stated on page 811, the duty to support an illegitimate child

> does not expire at the end of the second year of a child's life simply because his mother has failed to bring an action to establish the identity of his father.

*Bowen* concluded on page 811 that the 2-year statute

> does not signify a legislative intent that a putative father should escape liability for child support if a filiation proceeding is not instituted within the 2-year period, inasmuch as there is no similar limitation upon the time within which the prosecutor can bring an action to enforce support under RCW 26.20 [criminal nonsupport].

We read in the 2-year limitation of RCW 26.24.160 no indication of a legislative intent that filiation be the exclusive *civil* remedy of an illegitimate child.

*Bowen* highlights a further compelling reason why the filiation statute cannot be considered the exclusive civil remedy. In that case, it was held that a release negotiated between the mother and the putative father did not constitute a bar to a subsequent filiation proceeding. In so holding, the court determined that a child's right to support could not be waived by its mother. If the filiation statute were the exclusive private remedy, the failure of the mother to make a complaint within 2 years would forever foreclose her child from enforcing its right to support. But the law does not permit one to forfeit another's rights. Nullus jus alienum forisfacere potest.

The right of an illegitimate child to assert a claim for parental support is too fundamental to permit its forfeiture by its mother's failure to timely institute a filiation proceeding. *Cf. Walker v. Walker,* 266 So. 2d 385 (Fla. App. 1972) and *Storm v. None,* 57 Misc. 2d 342, 291 N.Y.S.2d 515 (1968). The law places no similar barrier to the enforcement of a legitimate child's right.

Defendant finally contends that by involving the prose-

cuting attorney, the legislature intended to provide a screening process to protect those who might otherwise be wrongfully accused. Citing S. Schatkin, *Disputed Paternity Proceedings* (4th ed. 1967), he asserts that it is well known that there is a high incidence of perjury in disputed paternity cases.

It has been recognized that historically, filiation statutes are at least "quasi" criminal and that both filiation and criminal nonsupport statutes are primarily designed to relieve the state of the burden of supporting dependent children.[2] Neither procedure is *primarily* designed to meet a child's fundamental need for parental support. Both impose impediments which are inconsistent with an exclusive purpose to protect children. In both, the active participation of the prosecuting attorney is required.

■ A putative father's rights may justly be recognized. But as the United States Supreme Court said in *Gomez v. Perez, supra* at 538:

> We recognize the lurking problems with respect to proof of paternity. Those problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination.

Washington's filiation procedures provide benefits for the mother and protections for the putative father. But if filiation were the exclusive remedy, a prosecuting attorney or a mother could deny an illegitimate child access to the court. Such a denial would violate the child's constitutional rights to due process. So construed, Washington's filiation procedures would be unconstitutional. But if Washington's filia-

---

[2] "It is often asserted that at common law a father had no duty to support his illegitimate child. Yet from as early as 1576 the Elizabethan Poor Law, by creating the strange hybrid called a bastardy proceeding, provided a method by which fathers could be forced to support their illegitimate children. The procedure looked criminal, commencing with the arrest of the defendant and including a preliminary hearing before a justice of the peace. Its chief purpose was not so much the protection of the child as the relief of the parish from the expense of supporting the child." (Footnotes omitted.) H. Clark, *The Law of Domestic Relations in the United States* § 5.3 (1968).

tion procedures are not exclusive, they cannot, because of official intransigence or maternal neglect, become "an impenetrable barrier" to an illegitimate child's right to support from its putative father.

> [I]f a statute is subject to two interpretations, one rendering it constitutional and the other unconstitutional, the legislature will be presumed to have intended a meaning consistent with the constitutionality of its enactment.

*Martin v. Aleinikoff*, 63 Wn.2d 842, 850, 389 P.2d 422 (1964). We hold that Washington's filiation procedures are not exclusive.[3]

Because of this holding, we do not reach the equal protection question inherent in a determination that the statutory remedies were exclusive. *Cf. Gomez v. Perez, supra,* and *Levy v. Louisiana,* 391 U.S. 68, 20 L. Ed. 2d 436, 88 S. Ct. 1509 (1968). Nor do we reach any questions of whether the filiation statute, because it may impose different obligations upon fathers than are imposed upon mothers, would violate article 31, section 1 of our state constitution (Amendment 61, The Equal Rights Amendment).

Reversed and remanded.

FARRIS and CALLOW, JJ., concur.

Petition for rehearing denied August 22, 1974.

Review denied by Supreme Court November 4, 1974.

---

[3]Defendant maintains in another context that the prosecuting attorney has no discretion in the matter and can be compelled to commence a filiation suit in which case there would be no "impenetrable barrier" to the enforcement of the child's right. But if this were the case, the statute would also not provide any of the "important protections" claimed by defendant to indicate legislative intent.