[No. 4195-1.    Division One.    July 12, 1976.]

THE STATE OF WASHINGTON, *Appellant*, v. GLENDON D. BOOTH, ET AL, *Respondents.*

*Christopher T. Bayley, Prosecuting Attorney,* and *Gerald A. Smith, Deputy,* for appellant.

ANDERSEN, J.—

FACTS OF CASE

This action was commenced as a filiation proceeding by the King County Prosecuting Attorney. By a judgment on stipulation entered in the Superior Court for King County on November 3, 1969, Glendon D. Booth was determined to be the father of a child born on April 1, 1970, to an unmar-

ried woman. The parents will hereinafter be referred to, respectively, as the "father" and "mother."

The judgment ordered the father to pay $60 a month support for the child until the child reached age 16. The filiation statute, under which the judgment was rendered, provided at that time that upon such a determination of parentage, support would be ordered to age 16; but in 1973, the statute was amended to require support to age 18. *See* RCW 26.24.090 (amended by Laws of 1973, ch. 29, § 1).

In 1974, the mother, through personal counsel, filed a petition herein seeking modification of the judgment to increase the amount of support, obtain payment of the child's medical and dental expenses, and to extend the term of support from age 16 to the age of majority. The King County Prosecuting Attorney also appeared in the case in support of the petition.

A hearing was held on the petition. The issues raised thereby were contested by the father, who was also represented by counsel.

On October 1, 1975, findings of fact, conclusions of law, and an order on the petition were entered. The trial court found that the father had a net income of $900 per month and that the parties' circumstances had substantially changed, including that the mother was on public assistance. The monthly support was ordered increased from $60 per month to $105 per month.

The trial court also found and concluded, however, that it was without authority to increase the term of support past age 16 and that, while the mother was receiving public assistance, the father should not be required to pay for the necessary medical and dental needs of his child. It is from these aspects of the trial court's ruling that the prosecuting attorney brings this appeal. The father has not filed a brief of respondent in this court and has not presented oral argument.

There are two dispositive issues in this case.

## ISSUES

ISSUE ONE. Did the trial court err in ruling that it was

without authority to order the father of a child born out of wedlock to pay support for his child past the child's 16th birthday?

ISSUE TWO. Did the trial court err in determining that the father should not be required to pay the child's necessary medical and dental needs as long as such expenses were being paid by the State through its public assistance program?

DECISION

ISSUE ONE.

CONCLUSION. Once it is determined in an appropriate legal proceeding that a man is the father of a child born out of wedlock, his consequent obligation to support, maintain, care for, and educate that child is the same as if his child had been born in lawful wedlock.

■ The father having neither filed a brief nor presented oral argument, we limit our review to determining whether appellant has made a prima facie case of error and, if so, we will reverse and determine the nature of the remand. *Riley v. Sturdevant*, 12 Wn. App. 808, 811, 532 P.2d 640 (1975); *Aquarian Foundation v. KTVW, Inc.*, 11 Wn. App. 476, 478, 523 P.2d 969 (1974).

The prosecuting attorney asks that we reverse the trial court on the basis that the amendment to the filiation statutes extending the father's duty of support from age 16 to age 18 authorized the trial court to extend the term of the 1970 support judgment from age 16 to age 18.

We do not decide the case on the basis urged because it begs the real issue of the case. The fundamental issue presented is as to the extent and nature of the obligation of a father to his child born out of wedlock.

In *State v. Coffey*, 77 Wn.2d 630, 465 P.2d 665 (1970), the history of our filiation statutes was traced from the original bastardy statute enacted as a part of the Code of 1881.[1] Justice Neill, writing for our State Supreme Court, described the changing nature of the legal consequences of illegitimacy:

[1]Code of 1881, §§ 1214-1221.

There was a time in the history of Anglo-Saxon jurisprudence when an illegitimate child was a total outcast, without a right to support from either its mother or father. In later common law, the duty of the support of such a child was entirely upon the mother. Now, almost universally, the father is given a share of this responsibility by statute. In keeping with this enlightened change of concept as to the status and rights of an illegitimate child, we are not disposed to treat the illegitimate child so differently from the legitimate child caught in the backwash of his parents' separation. In all sense of justice and equity, any such distinction, at least as to the right of parental support, belongs to a bygone day.

*State v. Coffey, supra* at 634-35. The court there held that the mother, as in the present case, had the right to petition to modify a filiation judgment, at least where the prosecuting attorney also appeared in the case.

In *State v. Russell,* 68 Wn.2d 748, 415 P.2d 503 (1966), it was held that the existence of the filiation statutes did not bar the prosecution of an unmarried father under the criminal nonsupport statutes when he failed to support his illegitimate children. After extensively reviewing the statutes and case law of this State, the court concluded:

It follows that, by the language of the statutes, by the policy of the law as declared by this court and by the demonstrated concern of this state in the protection of children, we do not recognize, except in divorce causes, that marriage is a necessity to proceeding against a parent or any other person who has a duty to support a child or ward.

(Footnote omitted.) *State v. Russell, supra* at 755.

Then in *Kaur v. Chawla,* 11 Wn. App. 362, 522 P.2d 1198 (1974), this court held that in addition to the remedies provided in filiation proceedings under RCW 26.24, and in criminal nonsupport prosecutions under RCW 26.20.030, the father had a duty to support his illegitimate child which could be judicially enforced under this State's common law.

In *Kaur v. Chawla,* we concluded that " '*there are no illegitimate children, only illegitimate parents.*' " (Italics ours.) *Kaur v. Chawla, supra* at 365, quoting with approval

from *Armijo v. Wesselius*, 73 Wn.2d 716, 721, 440 P.2d 471 (1968) and *In re Estate of Woodward*, 230 Cal. App. 2d 113, 118, 40 Cal. Rptr. 781, 784 (1964).

■ The law relating to the rights of illegitimate children has now evolved to the point, and we so hold in this case, that once it is determined in an appropriate legal proceeding that a man is the father of a child born out of wedlock, his consequent obligation to provide support, maintenance, care, and education for that child is the same as if his child had been born in lawful wedlock.

The critical time in a case such as this thus becomes the time when the fact of paternity is determined. As the United States Supreme Court has expressed in this regard:

> We recognize the lurking problems with respect to proof of paternity. Those problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination.

*Gomez v. Perez*, 409 U.S. 535, 538, 35 L. Ed. 2d 56, 93 S. Ct. 872 (1973). *Accord, Kaur v. Chawla, supra* at 367. The protection accorded to an alleged father, like that accorded to the mother and child, is the right to a fair trial under the law.

It is to be noted that subsequent to the trial of the present case, the legislature passed the Uniform Parentage Act, Laws of 1975, 2d Ex. Sess., ch. 42, p. 169 (effective June 25, 1976). This new enactment repeals the filiation statutes, including the right to a trial of the paternity issue to a jury, and establishes a comprehensive law by which parentage and the legal effects thereof shall henceforth be determined.[2]

■ In the present case, the fact of paternity was determined against the father by the 1970 judgment. The petition to modify the original filiation judgment was a proper way for the mother to proceed and it expressly put the

---

[2]The Uniform Parentage Act provides in part that "[t]he parent and child relationship extends equally to every child and to every parent, regardless of the marital status of the parents." Laws of 1975, 2d Ex. Sess., ch. 42, § 3, p. 169 (effective June 25, 1976).

father on notice of the additional support and other relief requested of him.

For the foregoing reasons, the trial court erred in determining that it was without authority to order the father to pay support past the child's 16th birthday; the trial court clearly had authority to provide therefor at least to the child's 18th birthday, the age of majority in this State. RCW 26.28.010.

ISSUE Two.

CONCLUSION. The primary obligation for the support and care of a child is on its parents and not on the taxpayers of this State. The obligation of a financially able father to pay for his child's necessary medical and dental expenses should not be excused for the reason that these necessities are being provided by the State's public assistance program.

■ The primary obligation for the support and care of a child is on the parents who bring the child into the world rather than on the taxpayers of the State. *Lizotte v. Lizotte*, 15 Wn. App. 622, 551 P.2d 137 (1976). The trial court, therefore, also erred in determining that the father should not be required to pay the child's necessary medical and dental needs as long as they were being paid by the State through its public assistance program.

The State established a prima facie case of error. *Riley v. Sturdevant, supra; Aquarian Foundation v. KTVW, Inc., supra.*

We reverse and remand for further proceedings consistent herewith.

WILLIAMS, C.J., and FARRIS, J., concur.