[No. 39093.    Department One.    July 3, 1968.]

*In the Matter of the Estate of* EDWARD F. PETERSON,
*Deceased.*
ROBERT ALLEN PETERSON, *Respondent,* v. WHATCOM LODGE
No. 151 F&AM, *Appellant.*\*

*Montgomery, Purdue, Blankinship & Austin,* for appellant.

*Kindall & Voris (Hobart S. Dawson,* of counsel), for respondent.

WEAVER, J.—Robert Allen Peterson, petitioner in the trial court and respondent in this court, claims the net assets of the estate of Edward F. Peterson, deceased.

\*Reported in 442 P.2d 980.

Petitioner claims, and the trial court found, that he was a pretermitted child under RCW 11.12.090:

If any person make his last will and die leaving a child or children or descendants of such child or children *not named or provided for in such will*, although born after the making of such will or the death of the testator, every such testator, as to such child or children not named or provided for, shall be deemed to die intestate, and such child or children or their descendants shall be entitled to such proportion of the estate of the testator, real and personal, as if he had died intestate, and the same shall be assigned to them, and all the other heirs, devisees and legatees shall refund their proportional part. (Italics ours.)

Defendant-appellant, a fraternal lodge, is the alternate legatee-devisee named in testator's will; testator's wife, whom he married in 1949, predeceased him leaving no children.

We find the following facts supported by the record.

During August of 1928, Laura Snow discovered she was enceinte; she claimed that Edward F. Peterson, the testator, was the father of her unborn child. Peterson at first refused to marry Laura and legitimatize their child. March 20, 1929, a criminal information was filed charging Peterson with seduction. He was released on bail.

April 2, 1929, the parties entered into an antenuptial agreement drawn by counsel for testator.

In the agreement, Laura asserted that the testator was the father of her unborn child, a fact which testator denied. We deem it significant, however, that testator (a) agreed that he would forthwith marry Laura; and (b) agreed that Laura might bear testator's name and was "entitled to give to said child, when born, the surname of "Peterson" and such Christian name or first name as she may desire . . ."

April 3, 1929, the day after the antenuptial agreement was signed, the testator, together with two of his friends, called for Laura at her home. The four of them drove from Bellingham to Everett. A marriage license was obtained; Laura and the testator were married by a justice of the peace. The testator returned his wife to her parents' home.

April 19, 1929, the testator filed an action for divorce, as agreed in the antenuptial agreement, alleging that the testator's consent to the marriage had been obtained by force and threat. The complaint alleged: "That there is no issue of said marriage."

April 21, 1929 — 2 days after the complaint was filed — petitioner was born. Petitioner's birth certificate identifies testator and Laura as his parents.

After an unexplained delay of almost 1½ years, an order of default, findings of fact and conclusions of law, and an interlocutory decree of divorce were entered September 5, 1930. The decree was made final March 7, 1931. The findings and interlocutory decree stated, in accordance with the complaint, that there was no issue of the marriage, a statement that was untrue at that time.

Shortly after petitioner's birth, Laura wrote a letter to the testator inviting him to visit his son; he did not do so. On several occasions subsequent to petitioner's birth and prior to the divorce becoming final, Laura attempted to communicate with testator by telephone; but he refused to talk with her. In 1947, when petitioner was 18 years old, Laura sent an announcement of petitioner's graduation from high school to testator. He ignored it.

In the antenuptial agreement, Laura agreed to make no further demands upon testator. Pursuant thereto, Laura bore all expenses of rearing petitioner.

■ We find no merit in appellant's contentions that petitioner either waived his right to his father's estate or is estopped from claiming it. The finding of "no issue" in the default divorce proceeding is not binding on petitioner for he was neither a party to nor represented in the proceeding. Petitioner in no way intentionally relinquished any rights as the son of the testator. Nor do we agree that, if petitioner prevails, appellant is entitled to a judgment over against Laura as an indemnitor under the antenuptial agreement. Laura is not making a claim against testator's estate.

It is beyond dispute that Edward F. Peterson, the testator,

and Laura Snow were legally married April 3, 1929; and that they are the parents of petitioner who was born in lawful wedlock. It follows that petitioner is the legitimate son of the testator.

The determinative question on this appeal is whether the testator's statement in his will that

I declare that I have no children, no children of deceased children, and no adopted children

is sufficient designation of petitioner as a child of the testator to preclude the operation of RCW 11.12.090, quoted *supra*. Clearly, petitioner was "not provided for" in the will; but was he "named"?

The statute is not ambiguous; its object

is not to compel the testator to make any substantial provision for his children, but is simply to provide against any such children being disinherited through inadvertence of the testator at the time he makes his will. *Bower v. Bower*, 5 Wash. 225, 227, 31 Pac. 598 (1892).

The will under consideration in *Gehlen v. Gehlen*, 77 Wash. 17, 137 Pac. 312 (1913), provided:

". . . I make no provision for my children after my death, or any child which may hereafter be born, knowing that my said wife, who is their mother, will deal justly with them. . . ."

The court held that the will satisfied the provisions of Rem. & Bal. Code, § 1326 (now RCW 11.12.090, *supra*). The court said:

It seems to us more consonant with the obvious purpose of the statute to hold that the naming of the children as a class, whether for the purpose of providing for them or for the purpose of disinheritance, when coupled with language conveying either intention, is such naming as to show that no child has been unintentionally overlooked, to avoid which contingency was the sole purpose of the statute. So far as any of our former decisions may be construed as holding the contrary, they are hereby overruled.

■ *In re Ridgway's Estate*, 33 Wn.2d 249, 205 P.2d 360 (1949), summarizes the decision in *Gehlen*:

It requires that a testator, in order to prevent the invoca-

tion of the statute against his estate, *must at least use words which describe his children as a class and must couple them with other language which conveys the intention either of providing for them or of disinheriting them.* Language any less certain, according to the *Gehlen* rule, will not satisfy this court that he had not inadvertently disinherited his children. (Italics ours.)

The statement in the will of the case before us — "I have no children, no children of deceased children, and no adopted children" — is not sufficient naming of a child, within the rule of *Gehlen, supra,* and *Ridgway, supra,* to satisfy RCW 11.12.090. It is not a designation; it is a denial, and the mistaken denial that he has children seems to us a clear example of a situation in which the statute was intended to operate to protect a forgotten child from being disinherited. There is no indication in the will that the testator remembered the petitioner and intended to disinherit him.

The judgment is affirmed.

FINLEY, C. J., HUNTER and HALE, JJ., and LANGENBACH, J. Pro Tem., concur.