[No. 42163.   En Banc.   June 8, 1972.]

JERRY DEUTSCH, *Plaintiff*, v. WEST COAST MACHINERY COMPANY, *Defendant*, MARUBENI-IIDA, INC., *Respondent*, KANSAI IRON WORKS, LTD., *Petitioner*.

*Houger, Garvey, Schubert & Barnes, L. William Houger, E. Charles Routh,* and *Dan Fenno Henderson,* for petitioner.

*Karr, Tuttle, Koch, Campbell, Mawer & Morrow, Robert P. Piper,* and *Steven V. Lundgren,* for respondent.

HUNTER, J.—This is a review of an order denying the motion of the third party defendant (petitioner), Kansai Iron Works, Ltd. (a Japanese corporation hereafter referred to as Kansai), to dismiss for lack of jurisdiction a cross complaint by the third party plaintiff (respondent), Marubeni-Iida, Inc. (a New York corporation hereafter referred to as Marubeni America).

The suit giving rise to the cross claim and to this action was initiated by the plaintiff, Jerry Deutsch, against the defendants, West Coast Machinery Company (a Washington corporation hereafter referred to as West Coast), Marubeni America and Kansai. Service of process was made upon West Coast and Marubeni America, but not upon Kansai. The plaintiff is now barred by the statute of limitations from asserting any claim against Kansai.

The plaintiff, an employee of the Boeing Company on June 28, 1968, seriously injured his hand at work while

operating a large mechanical metal press. The press was sold to the Boeing Company by West Coast. West Coast purchased the press from Marubeni America, which in turn purchased the press from Marubeni-Iida Co., Ltd. (a Japanese corporation hereafter referred to as Marubeni Japan). Marubeni Japan purchased the press from Kansai, the manufacturer and petitioner herein.

Kansai is an Osaka, Japan company engaged in the manufacture of heavy machinery. In May of 1966, upon receipt of a purchase order from Marubeni Japan, Kansai manufactured a 110-ton open back noninclinable power press. The record indicates that the press was manufactured according to extensive specifications furnished by the Boeing Company. The press was delivered to Marubeni Japan, a large Japanese trading company, which in turn shipped it to its subsidiary, Marubeni America, at its Los Angeles headquarters. The press was then sent to West Coast who delivered it to the Boeing Company. In January of 1967, Kansai sent its engineers to the Boeing Company in Washington to test the operation of the press. Subsequently, a selector switch failed. At the request of Marubeni Japan, Kansai sent a replacement switch to West Coast for installation on the press. In June of 1967, Kansai sent its engineers to the Boeing Company with parts for the machine. Pursuant to Boeing Company policies, however, Boeing personnel made the actual repairs in replacement of the parts. In July of 1967, Kansai sent an engineer, Mr. Obatake, to the United States with respect to machinery in other states and to that located at the Boeing Company. Mr. Obatake, however, was not allowed to make any adjustments or repairs to the press.

The plaintiff Deutsch claims that the press was defective and malfunctioned, severing most of his left hand, for which he is asking $275,000. On April 10, 1970, Marubeni America filed a cross claim for indemnification against Kansai. On December 3, 1970, Kansai filed a notice of appearance to contest jurisdiction. On July 30, 1971, Kansai moved for an order dismissing the complaint against it on the grounds

that the Washington court lacked jurisdiction over it. The motion was denied September 23, 1971, and this court granted a writ of certiorari on October 15, 1971, which has brought the matter here for review.

The petitioner, Kansai, claims that service of process was not made on it by Marubeni America; however, we find this contention to be without merit as service was admitted by Japanese counsel for Kansai in the documents which are on file and constitute a part of the record in this case. Furthermore, the record contains substantial additional evidence supporting the conclusion that service was effected upon Kansai through the Osaka District Court in Japan.

Kansai's primary contention is that it has no sales representatives, service facilities, or other personnel in the state of Washington or anywhere in the United States and that it does not directly advertise or solicit orders or transact any business in the state of Washington which would submit it to the Washington jurisdiction.

The third party plaintiff, Marubeni America, claims that the Washington court has jurisdiction over Kansai under the provisions of RCW 4.28.185, our long-arm statute, which provides, in part, as follows:

(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

(a) The transaction of any business within this state;

(b) The commission of a tortious act within this state;

The basic issue here is whether the courts of this state, under the long-arm statute, have jurisdiction over Kansai Iron Works, Ltd., a Japanese corporation, as a third party defendant under a cross claim for indemnification, when a product of that corporation is sold through intermediaries to a Washington corporation, with the knowledge that the product is being sold ultimately to a Washington corpora-

tion, and that product causes injury in the state of Washington by reason of an asserted defective manufacture of the product, while being used for the purposes for which it was intended.

It is well established in this state that under the long-arm statute, RCW 4.28.185, our courts may assert jurisdiction over nonresident individuals and foreign corporations to the extent permitted by the due process clause of the United States Constitution, except as limited by the terms of the statute. *See Oliver v. American Motors Corp.,* 70 Wn.2d 875, 425 P.2d 647 (1967), and *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 381 P.2d 245 (1963), and cases cited therein. In order to subject nonresident defendants and foreign corporations to the in personam jurisdiction of this state as the forum under RCW 4.28.185(1)(a) and (b), the following factors must coincide: (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. *Callahan v. Keystone Fireworks Mfg. Co.,* 72 Wn.2d 823, 435 P.2d 626 (1967); *Quigley v. Spano Crane Sales & Serv., Inc.,* 70 Wn.2d 198, 422 P.2d 512 (1967); *Tyee Constr. Co. v. Dulien Steel Prods., Inc., supra.*

In the instant case, the record shows numerous uncontroverted contacts between Kansai and the state of Washington. Kansai manufactured, packaged and shipped the press according to Boeing Company specifications, as evidenced by Boeing Spec. No. EEUM 6204P containing the following relevant provisions:

## 1.0 Scope

1.1 This specification is intended to cover the procurement of a Kansai Iron Works, 110 Ton Openback Non-Inclinable Press, with features and modifications to meet or exceed the requirements specified.

. . .

## 3.0 Requirements

Manufacturer's contractual obligations for the design and function of an existing, standard model press.

. . .

## 4.0 Inspection and Acceptance

. . .

4.6 Final acceptance shall be contingent upon the equipment meeting the specifications and above requirements after installation at the Buyer's plant.

. . .

## 6.0 Shipping

6.1 The press, when shipped, shall include all necessary electrical motors, pumps, piping and controls, wiring and piping between press, pumps, motors and control units to be operative when set up.

6.2 All rust preventive coatings, packing, crating, etc., must conform to good export practices in order to insure minimum exposure of equipment during shipment.

6.3 The number of shipping units and/or crates shall appear on each unit and/or crate and contents of each shall be furnished to the customer.

## 7.0 Manufacturer's Responsibility

7.1 The machine tool manufacturer shall be responsible for the design, manufacture, performance, reliability and packaging of the control system and the controlled equipment as defined in this specification. This responsibility shall provide for technical direction during installation and maintenance assistance during the warranty period.

7.2 Warranty:
The vendor shall warrant that all equipment

delivered to this specification shall be free from defects in materials and workmanship, that all items will conform to applicable specifications and drawings and to the extent that such items are not manufactured pursuant to detailed design furnished by buyer, that all items will be free from defects in design and suitable for the intended purpose. Warranties shall extend for one year from date of first full and satisfactory operation at the buyer's plant assuming equipment to be installed within 60 days of shipping date.

And as evidenced by West Coast's purchase order containing *inter alia,* the following requirement:

4. Packaging and shipping must be in accordance with Boeing form ADX 4797.

In June 1966, at the request of Kansai, Boeing personnel were present for a test operation of the press at its plant in Japan. And, as heretofore stated, in January 1967, Kansai sent its engineers to the Boeing Company in Washington to test the operation of the press; Kansai sent a replacement selector switch to Washington for installation on the press; in June 1967, Kansai sent its engineers to the Boeing Company with parts and to check the operation of the press; and, in July 1967, Kansai's engineer, Mr. Obatake, visited the Boeing Company with respect to the press.

From these facts, we are convinced that the first two essential factors for the Washington court to take jurisdiction under the long-arm statute have been fulfilled in that the activities of the petitioner, Kansai, incidental to its manufacture, testing, sale and subsequent inspections of the press at the Boeing Company, and the replacement of the selector switch and of other parts thereon, constituted the transaction of business within the state; that Kansai purposefully manufactured the press knowing that the Boeing Company was the ultimate buyer; and that the press was used as intended, which resulted in injury to the plaintiff in the state of Washington, due to the claimed defective manufacture.

It is argued, however, that this court cannot take jurisdiction of Kansai as to do so would offend the traditional notions of fair play and substantial justice, therein failing to fulfill the third factor essential for the Washington court's jurisdiction. In making this determination, we must consider the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

In consideration of this contention, it must first be remembered that this was not an isolated transaction of Kansai in the United States. The record shows that the business of Kansai was extensive in this country in that it sent its engineers to the United States in response to matters concerning machinery in other states and in Washington, and that it would therefore be relatively more convenient for Kansai to appear in the Washington courts than for the third party plaintiff and necessary witnesses to appear in the courts of Japan. Further, Kansai has had the benefit of the protection of the laws in this country and this state in the prosecution of its business.

Moreover, by reason of the asserted commission of a tort by Kansai in the state of Washington, resulting from the manufacture of the defective press, the instant case falls within the reasoning of those cases which hold that a manufacturer, under these circumstances, cannot reasonably claim it is surprised at being held to answer for the damage its product causes in the jurisdiction where it purposely intended the product to be used. *See Quigley v. Crane Sales & Serv., Inc.,* 70 Wn.2d 198, 422 P.2d 512 (1967); *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.,* 66 Wn.2d 469, 403 P.2d 351 (1965), *cert. denied,* 382 U.S. 1025; *Nixon v. Cohn,* 62 Wn.2d 987, 385 P.2d 305 (1963). *See also Benn v. Linden Crane Co.,* 326 F. Supp. 995 (E.D. Pa. 1971); *Duple Motor Bodies, Ltd. v. Hollingsworth,* 417 F.2d 231 (9th Cir. 1969). We are satisfied that the traditional notions of fair play and substantial justice are not offended by the

Washington court in taking jurisdiction of Kansai in this case.

■ Kansai argues, however, that a different rule must be applied when this involves the manufacturer in a foreign country. This argument was specifically answered in the recent case of *Duple Motor Bodies, Ltd. v. Hollingsworth, supra,* involving a foreign manufacturer located in England. The Ninth Circuit Court, interpreting the Hawaii long-arm statute which is similar to our Washington statute, stated at page 235:

> In our judgment, the presence of Duple's coach bodies in Hawaii, brought about by Duple's sale to Vauxhall with knowledge that the product was destined for Hawaii, was sufficient contact with Hawaii to meet the requirements of due process.

> We do not regard it as offensive to fair play or substantial justice or an undue burden on foreign trade to require a manufacturer to defend his product wherever he himself has placed it, either directly or through the normal distributive channels of trade. If it is clearly foreseeable as a result of trade with a foreign state that injury from a defective product (if it occurs) would occur in that state, the hardship of defending the product in that state in our judgment must be assumed as an attribute of foreign trade.

(Footnotes omitted.)

In the case of *Benn v. Linden Crane Co., supra,* the foreign manufacturer was in the country of Sweden. In that case a crane was sold to a purchaser in Connecticut, but the manufacturer did not know, as the manufacturer did in the instant case, where it was ultimately to be used in the United States. The court held, however, that the knowledge it was to be ultimately used in the United States was sufficient to constitute the foreign manufacturer doing business within the state of Pennsylvania, under the Pennsylvania long-arm statute, where the crane was ultimately used, and that the extension of jurisdiction by the Pennsylvania court over the Swedish corporation did not offend "notions of fair play and equal justice." The court stated:

Linden-Alimak had reason to know that the crane would be resold for ultimate use and operation in the United States. The crane, while being operated in Pennsylvania, allegedly injured plaintiff by reason of a malfunction claimed to be caused by the negligence of the manufacturer and others. Under these facts, I find that Linden-Alimak made an "indirect shipment of goods" into Pennsylvania and was "doing business" within the definition of the Pennsylvania statute. Linden-Alimak is thereby rendered subject to the jurisdiction of this Court.

. . .

"... When a manufacturer voluntarily chooses to sell his product in a way in which it will be resold from dealer to dealer, transferred from hand to hand and transported from state to state, he cannot reasonably claim that he is surprised at being held to answer in any state for the damage the product causes."

. . .

. . . I find that there were sufficient contacts between defendant and Pennsylvania at the time this action was instituted to come within the broad constitutional limits of due process as set forth in International Shoe Company v. State of Washington, *supra,* and later cases. Under the facts of this case, it is unnecessary to decide just how far the term "shipping of merchandise directly or indirectly into or through" Pennsylvania may extend within the constitutional limits of "due process". *As applied to the facts herein disclosed and the statute as herein interpreted, the extension of jurisdiction over the Swedish corporation, Linden-Alimak, I find does not violate "due process" nor offend the "notions of fair play and equal justice".*

(Italics ours.) *Benn v. Linden Crane Co.,* 326 F. Supp. 995, 997 (E.D. Pa. 1971).

We agree with the reasoning of the courts in *Duple* and *Benn,* and are satisfied that the traditional notions of fair play and substantial justice have not been violated as applied to Kansai, the third party defendant, in this case.

■ Kansai further argues, however, that the trial court, in denying its motion for dismissal, has violated the

commerce clause of the United States Constitution, article 1, section 8:

The congress shall have power   .  .  .

To regulate commerce *with foreign nations,* and *among the several states,*  .  .  .

.  .  .

.  .  .  ; and

To make all laws which shall be necessary and proper for carrying into execution the foregoing powers,  .  .  .

(Italics ours.)

Essentially, the question raised by this argument is whether the state courts, in assuming jurisdiction of a foreign manufacturer, create a burden upon foreign commerce. The crucial test is the same as in the case of interstate commerce, whether taking jurisdiction of a nonresident manufacturer in this country by the Washington court is offensive to the traditional notions of fair play and substantial justice, and thereby constituting an undue burden on interstate commerce.

We are aware, however, in applying this test to foreign commerce, that great caution should be exercised in that factors are involved by reason of natural barriers affecting cost of travel and communication, which are less likely to exist in the case of nonresident manufacturers in the United States. These factors, however, have been considered in our determination of the issue of the traditional notions of fair play and substantial justice as applied to the parties in this case, and we are satisfied that no undue burden upon foreign commerce will result from this determination.

█ The petitioner argues that the long-arm statute does not apply to this indemnity action and that for purposes of the third party action, Kansai neither transacted any business nor committed a "tortious act" in Washington. We disagree.

The rights of the third party plaintiff for indemnification against the third party defendant in this action are dependent upon the primary liability of the third party defendant

by reason of its asserted negligence in the manufacture of the press. It would not only be most unfair to require the third party plaintiff to relitigate this case in another independent action, but it would be contrary to the doctrine that would avoid a multiplicity of suits. This doctrine is expressly contemplated by our court rule, CR 14(a), which provides in part:

> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him.

It is clear that the rule affords a means of bringing in a third party who may be liable to the defendant by way of indemnity, subrogation, contribution and warranty, as well as in other situations. This rule is consistent with the case law in this state in regard to the right of a third party to indemnity from a wrongdoer who is guilty of primary negligence. In *Rufener v. Scott*, 46 Wn.2d 240, 242, 280 P.2d 253 (1955), we held:

> It is the general rule that there is no right of indemnity between joint tort-feasors. *Duncan v. Judge*, 43 Wn.2d 836, 264 P.2d 865. However, if the tort-feasors are not *in pari delicto*, and the negligence of one is primary or active, and the negligence of the other is passive, resulting in injury to a third person, and the one guilty of passive negligence is required to answer in damages to the third person, he is entitled to indemnity from the wrongdoer guilty of primary negligence.

In the instant case the injury to the plaintiff is claimed to be a result of the primary negligence of the manufacturer, the third party defendant. The third party plaintiff under our law, therefore, is entitled to indemnification from the manufacturer, and to the benefit of the long-arm statute. This rule is also followed in other jurisdictions.

In the case of *Kroger Co. v. Adkins Transfer Co.*, 284 F. Supp. 371 (M.D. Tenn. 1968), which involved the determination of whether an action for the indemnification against

a nonresident manufacturer comes within the Tennessee long-arm statute which, similar to our statute, predicates jurisdiction of the court over an out-of-state manufacturer for a tortious act committed within the state, the court, in upholding the rule, made the following statement, at page 375:

> In the closely analogous case of Beetler v. Zotos, 388 F.2d 243 (7th Cir. 1967), the court was faced with this same issue, that is, whether an action for indemnification against a nonresident indemnitor comes within § 17(1)(b) of the Illinois "long-arm" statute which predicates in personam jurisdiction, as does T.C.A. § 20-235(b), upon "[t]he commission of a tortious act within this State." In concluding that out-of-state service of process pursuant to § 17(1)(b) was valid, the Court of Appeals reasoned that:
>
>> "an indemnitee, where he seeks to recover for damages paid for injuries caused by the negligent or wrongful act of the indemnitor, may proceed by action ex delicto, as by an action on the case—a tort action." (388 F.2d at 245) [Citations omitted.]

(Footnote omitted.)

RCW 4.28.185, our long-arm statute, does not discriminate between first and third party actions. A third party plaintiff has the same rights as the primary plaintiff and, under the statute and CR 14(a), may bring in a nonresident who is or may be liable to him for all or part of the primary plaintiff's claim against him.

The petitioner cites *Tyee Constr. Co. v. Dulien Steel Prods., Inc.*, 62 Wn.2d 106, 381 P.2d 245 (1963), as requiring a third party plaintiff asserting jurisdiction over a nonresident to separately establish jurisdiction on the basis of contacts within the forum between that party and the proposed third party defendant. This was not the issue in *Tyee*. The question there was whether the third party defendant had transacted sufficient business *within this state* to be brought within the meaning of our long-arm statute, RCW 4.28.185(1)(a). We held it had not. Not so as to Kansai. The *Tyee* case further is not apposite in that it in

no way involves an indemnification action arising out of the commission of a tortious act committed in this state.

For the reasons heretofore stated, we hold that the petitioner, Kansai, has submitted itself to the jurisdiction of the courts of this state.

The order of the trial court, denying the motion for dismissal of Kansai as the third party defendant in this case, is affirmed.

HAMILTON, C.J., FINLEY, ROSELLINI, HALE, NEILL, STAFFORD, WRIGHT, and UTTER, JJ., concur.