[No. 43830. En Banc. April 8, 1976.]

*In the Matter of the Custody of* JOSEPH KALEY MILLER, ET AL. JOSEPHINE ANN MOSES, *Petitioner*, v. GILBERT JAMES MILLER, *Respondent*.

*John L. Jarrett* and *Roger Coombs* of *Spokane County Legal Services,* for petitioner.

*John D. MacDougall, Prosecuting Attorney,* and *Andrew C. Braff, Deputy,* for respondent.

*Lewis H. Orland,* amicus curiae.

This opinion was prepared by the late Justice Robert C. Finley. It is adopted by the undersigned Justices as the opinion of this Court.

In this matter, the issue is whether it was error for the Superior Court for Stevens County to deny permanent custody to the mother of four minor children solely on the ground that the court lacked in personam jurisdiction over the nonresident father of the children.

We reverse the trial court and hold that it has in personam jurisdiction because (1) the record contains evidence indicating the commission in Washington of a tortious act, namely child nonsupport by the father, and (2) this tortious act permits the extension of jurisdiction under Washington's long-arm statute (RCW 4.28.185), without offending the minimal due process standards established in *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057 (1945).

The decision in *May v. Anderson*, 345 U.S. 528, 97 L. Ed. 1221, 73 S. Ct. 840 (1953), seems to have become something of a sacred cow in the law of domestic relations but, we think, with about as little rationality as attributable generally to the idolization of most sacred cows. In *May v. Anderson, supra*, the court seems to have overlooked, or perhaps closed its eyes to *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950), with its potential for an accommodation of any due process difficulties in custody cases. Certainly the court ignored the practical, critical, and crucial problems with which courts, parents, and children frequently are faced in custody proceedings. Essentially, the court seems to have failed to recognize the inappropriateness of requiring in personam jurisdiction over both parents as an *indispensable ingredient* of a custody proceeding. Suffice it to say that the Supreme Court's timid approach to concepts of state court jurisdiction has been criticized vigorously.[1] We believe that the

---

[1]Currie, *Justice Traynor and the Conflict of Laws*, 13 Stan. L. Rev. 719, 769 (1961); A. Ehrenzweig, *A Treatise on the Conflict of Laws* § 87, at 287, 289 (1962); Hazard, *May v. Anderson: Preamble to Family Law Chaos*, 45 Va. L. Rev. 379, 386 (1959); Ratner, *Child Custody in a Federal System*, 62 Mich. L. Rev. 795 (1964); *see* Currie, *Full Faith and*

*May v. Anderson* decision has lost the vitality it may once have had and should be overruled. Fortunately, because of the availability of Washington's long-arm statute,[2] and because of the facts of the instant child custody case, *May v. Anderson* does not present an insurmountable obstacle to the reasonable and effective administration of justice in the instant case.

Petitioner, Josephine Moses, is the mother of four children, two boys and two girls, aged from 4 to 8 years. All are Washington domiciliaries and reside in Stevens County. The putative, but not duly married, father, Gilbert Miller, resides in Idaho and is domiciled there.

On December 26, 1974, the father brought the four children, ill-clad and in an unkempt condition, to the mother's home where he delivered them to her. The record does not reflect where the parents lived prior to the time the children were turned over to the mother. On January 6, 1975, the mother filed a summons and petition in Stevens County Superior Court seeking a decree (1) awarding her permanent custody of the children, subject to reasonable rights of visitation, and (2) ordering the father to pay child support. A copy of the summons and petition was served personally on the father in Idaho on January 16, 1975, but he failed to respond. The mother later caused a notice of intent to take default to be mailed to the father at his Idaho address. The father again did not respond.

Also, on January 6, 1975, the mother filed a motion in the

---

*Credit, Chiefly to Judgments: A Role for Congress,* 1964 Sup. Ct. Rev. 89, 117-18.

[2]RCW 4.28.185 provides, in part:

"(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

". . .

"(b) The commission of a tortious act within this state;

". . .

"(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction ove[r] him is based upon this section."

case to enable her to proceed in forma pauperis. The accompanying affidavit fully discloses her impoverished financial status. Listing the sources of any income or other funds received from January 1, 1974, to January 3, 1975, the mother stated that during this period of time she received certain *per capita payments*, apparently to be used for necessities only for the boys, and that she worked for a short time at the Native American Center in Spokane. The affidavit also lists all of her expenses, debts, and assets. It is apparent that, if the mother had received any income for the support of the children from the father, this fact would have been reflected in the affidavit. Thus, the affidavit provides a convincing, if not inescapable, evidentiary inference that the father has not provided for the support of the children. Such an inference from the affidavit is consistent with the provision of the petition requesting the assistance of the court in obtaining child support from the father.

On March 28, 1975, the trial court held a hearing on the mother's petition in the superior court at which she sought an order of default and an entry of findings of fact, conclusions of law, and a decree awarding her custody of the children. The trial judge took the matter under advisement and on April 11, 1975, returned to the mother's attorney the unsigned findings, conclusions, and decree with a letter explaining that the superior court lacked jurisdiction to award custody to the mother without in personam jurisdiction over the father.

The mother then filed an application for a writ of certiorari to the Supreme Court. The writ was granted, and on August 22, 1975, we remanded the case to the trial court for the entry of an order disposing of the mother's application for a child custody decree. Jurisdiction was retained for the purpose of review. On September 2, 1975, the trial judge signed an order denying the mother's motion for the entry of findings, conclusions, and decree. The first writ of certiorari was amended with the consent of petitioner and the prosecuting attorney to show that the September 2, 1975, written order had been signed and filed as indicated.

■ The application for the original writ of certiorari was premature. The trial court had not made a final determination which is necessary in order to make the application for the writ. RCW 7.16.030-.040; *see State ex rel. Thomas v. Lawler*, 23 Wn.2d 87, 159 P.2d 622 (1945). A writ of certiorari may be treated as a writ of mandamus, it being so in substance. *See Tuschoff v. Westover*, 60 Wn.2d 722, 375 P.2d 254 (1952); *State ex rel. Pacific Fruit & Produce Co. v. Superior Court*, 22 Wn.2d 327, 155 P.2d 1005 (1945). A writ of mandamus is not premature because it was the duty of the trial judge to complete the exercise of the court's jurisdiction by entering findings, conclusions, and judgment of dismissal to embody his view that the court lacked jurisdiction. That duty was not discharged even by the entry of the written order of September 2, 1975. A writ of mandamus lies to compel performance of that duty. *See State ex rel. Pacific Coast Adjustment Co. v. Taggart*, 159 Wash. 201, 204, 292 P. 741 (1930).

■ Although there may not be sufficient evidence in the record to indicate that the father had delivered the children to the mother in Washington *for the purpose of abandoning them*, there is ample evidence to show that he *has failed to support them*. The distinction between abandonment and nonsupport is crucial. They are not synonymous; nonsupport in and of itself does not constitute abandonment. *Smith v. Smith*, 67 Idaho 349, 180 P.2d 853 (1947). The term "abandonment" means the voluntary failure or neglect *to care for as well as the failure to support*, *i.e.*, furnish necessary food, clothing, and shelter, a child. *See In re Adoption of Lybbert*, 75 Wn.2d 671, 674, 453 P.2d 650 (1969); *In re Adoption of Webb*, 14 Wn. App. 651, 544 P.2d 130 (1975); *In re Paden*, 181 Misc. 1025, 43 N.Y.S.2d 305, 308 (1943). The duty to "care for" includes the parental obligation to train, supervise, and guide a child's growth and development. *In re Estate of Musczak*, 196 Misc. 364, 92 N.Y.S.2d 97, 99 (1949). Nonsupport, on the other hand, connotes a failure to contribute to the maintenance and material well-being of a child. *In re Estate of Musczak*,

*supra* at 100; *see* RCW 26.20.030(1)(b) (failure to "furnish necessary food, clothing, shelter, or medical attendance.")

The distinction between abandonment and nonsupport is reflected further by the statutory scheme providing for criminal nonsupport prosecution under RCW 26.20.030.[3] Under that statute, abandonment is distinguished from nonsupport. *Huffman v. Smith*, 34 Wn.2d 914, 918, 210 P.2d 805 (1949); *see State v. Russell*, 68 Wn.2d 748, 755, 415 P.2d 503 (1966); *State v. Brown*, 52 Wn.2d 92, 94, 323 P.2d 239 (1958).

 The failure of a parent to support his or her children constitutes a tort. In *State ex rel. Nelson v. Nelson*, 298 Minn. 438, 216 N.W.2d 140, 143 (1974), a filiation proceeding, the court stated:

> The doing of an act prohibited by law or the neglect to perform a duty imposed by law, resulting in damages to another, creates a legal liability, . . . and may be denominated a tort within the scope of the long-arm statute.

(Citation omitted.) *Accord, Gentry v. Davis*, 512 S.W.2d 4, 6 (Tenn. 1974) (a filiation proceeding in which the long-arm statute was applied). In *Nelson*, the court concluded that the father's failure to perform his statutory duty to support his child caused foreseeable damages to the complainant and provided a sufficient basis upon which to exercise in personam jurisdiction under the long-arm statute. See Ratner, *Child Custody in a Federal System*, 62 Mich. L. Rev. 795, 839 (1964).

---

[3]RCW 26.20.030 provides, in part:

"(1) Every person who:

"(a) Has a child dependent upon him or her for care, education or support and deserts such child in any manner whatever with intent to abandon it; or

"(b) Wilfully omits, without lawful excuse, to furnish necessary food, clothing, shelter, or medical attendance for his or her child or stepchild or children or stepchildren or ward or wards: *Provided*, That with regard to stepchildren the obligation shall cease upon termination of the relationship of husband and wife; or

"(c) . . . shall be guilty of the crime of family desertion or nonsupport."

In Washington, a parent has both a statutory and a common-law duty to support his or her children. For example, a putative father's duty to support his children can be enforced judicially on behalf of the children by a filiation proceeding (RCW 26.24), or under the common-law right of illegitimate children to support by their natural father. *Kaur v. Chawla*, 11 Wn. App. 362, 522 P.2d 1198 (1974). The record demonstrates that the father has failed to support his children since December 1974. Nonsupport constitutes a tortious act.

■ The merits of the jurisdictional question may now be addressed. In *Tyee Constr. Co. v. Dulien Steel Prods., Inc.*, 62 Wn.2d 106, 115-16, 381 P.2d 245 (1963), the court set forth an oft-repeated jurisdictional formula:

> [T]here are three basic factors which must coincide if jurisdiction is to be entertained. Such would appear to be: (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

(Footnotes omitted.) All of these elements must be satisfied in order to exercise in personam jurisdiction under Washington's long-arm statute.

■ The first requirement is met because the father *purposefully* has failed to support his children since he delivered them to their mother in December 1974. The failure of a nonresident to perform his duty or obligation as imposed by law to support his natural children, whether they be domiciled or merely resident in this state, constitutes a tortious act as that term is contemplated by RCW 4.28.185 (1) (b).

■ The next issue, one of general fairness, concerns the

second element of the *Tyee* jurisdictional formula. It requires that the cause of action *arise from or be connected with* the tortious act. The custody proceeding is an integral part of, grows out of, and is *connected with* the father's purposeful failure or omission to support his offspring. It was reasonably foreseeable to the respondent that, as a direct result of his nonsupport, the petitioning mother upon whom the children depend for their material well-being would seek the legal custody of the children. The second prerequisite to the exercise of long-arm jurisdiction is complied with because the custody matter is *connected directly with* the respondent's other actions or activities in the state. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445-46, 96 L. Ed. 485, 72 S. Ct. 413 (1952); *Smith v. York Food Mach. Co.*, 81 Wn.2d 719, 725, 504 P.2d 782 (1972); *Deutsch v. West Coast Mach. Co.*, 80 Wn.2d 707, 713, 497 P.2d 1311 (1972); Kurland, *The Supreme Court, The Due Process Clause and The In personam Jurisdiction of State Courts, From Pennoyer to Denckla: A Review*, 25 U. Chi. L. Rev. 569, 601 (1958).

■ In determining whether the respondent is accorded the "fair play and substantial justice" requirement of the *Tyee* jurisdictional formula, this must be considered in context with and cannot be divorced from the nature of the underlying controversy which evoked this litigation. One also must keep in mind that the welfare of the children is the paramount concern, coupled with the secondary interests of the parents and the state in the resolution of this issue.

■ Traditionally, custody has been treated as a matter of "status" and has been analogized to other status concepts, *e.g.*, marriage, legitimacy, and adoption. Although the purpose of other status concepts primarily may involve the creation or recognition of legal relationships, custody differs somewhat in that it is concerned with determining conflicting claims to the care and control of the children. It recognizes and imposes new personal obligations on parents

(and occasionally third parties) with respect to the subject matter of the custody proceeding, *i.e.*, children.

It should be noted that, in addition to the requirement of in personam jurisdiction[4] over both parents,[5] Washington persistently has followed the rule that the child must be domiciled in the state.[6] Even this rule is too harsh because

---

[4]Although a custody proceeding has been labeled in personam in its nature (*May v. Anderson*, 345 U.S. 528, 533, 97 L. Ed. 1221, 73 S. Ct. 840 (1953)), it does not comfortably fall within this classification because it is concerned primarily with the welfare of children and not with the adjudication of rights in children as if they were chattels. *May v. Anderson, supra* at 541 (Jackson, J., dissenting).

[5]*See Weber v. Weber*, 6 Wn. App. 722, 725, 496 P.2d 576 (1972); Currie, *Justice Traynor and the Conflict of Laws*, 13 Stan. L. Rev. 719, 768 (1961); Hazard, *May v. Anderson: Preamble to Family Law Chaos*, 45 Va. L. Rev. 379, 386 (1959); Ratner, *Child Custody in a Federal System*, 62 Mich. L. Rev. 795, 805 (1964); *cf. In re Marriage of Saucido*, 85 Wn.2d 653, 538 P.2d 1219 (1975) (a permanent child custody award by the court of a sister state having jurisdiction of the parties and of the subject matter is entitled to full faith and credit). Whether the full faith and credit clause, U.S. Const. art. 4, § 1, is applicable to custody decrees is a question not yet answered by the Supreme Court. Even if the full faith and credit clause were applicable to custody decrees, it would require the forum to recognize the order as binding only if the state that rendered the decree were bound by it. *Ford v. Ford*, 371 U.S. 187, 192, 9 L. Ed. 2d 240, 83 S. Ct. 273 (1962); *see New York ex. rel. Halvey v. Halvey*, 330 U.S. 610, 614-15, 91 L. Ed. 1133, 67 S. Ct. 903 (1947).

[6]*In re Marriage of Saucido*, 85 Wn.2d 653, 659, 538 P.2d 1219 (1975); Restatement of Conflict of Laws § 146 (1934); *see Chandler v. Chandler*, 56 Wn.2d 399, 406, 353 P.2d 417 (1960).

Prior to *May v. Anderson*, 345 U.S. 528, 97 L. Ed. 1221, 73 S. Ct. 840 (1953), jurisdiction over both parents was not considered *indispensable* in order to create a binding custody decree. Various views have been advanced for determining jurisdiction in child custody cases. The first is based on in personam jurisdiction over the child's parents. The second allows jurisdiction to be based on the child's domicile alone. The third allows jurisdiction to be based upon the physical presence of the child, and the fourth allows concurrent jurisdiction in all of the above forums. For a discussion of the various theories, *see Pickler v. Pickler*, 5 Wn. App. 627, 489 P.2d 932 (1971); *Hawkins v. Hawkins*, 264 Ore. 221, 504 P.2d 709 (1972); H. Clark, *The Law of Domestic Relations in the United States* § 11.5, at 321 (1968); A. Ehrenzweig, *A Treatise on the Conflict of Laws* § 86 (1962); R. Leflar, *American Conflicts Law* § 245 (1968); Ratner, *Child Custody in a Federal System*, 62 Mich. L. Rev. 795, 807-08 (1964); Restatement (Second) Conflict of Laws § 79,

the technical subtleties of the concept[7] are irrelevant to a custody proceeding.

Washington adheres to the view taken by the old Restatement,[8] which treats the child's status as though it were a "res."[9] The theory is that the "res" is subject to the control or power of the state in which the child is domiciled because the domiciliary state has the most substantial interest in the welfare of its citizens. Restatement (Second) Conflict of Laws § 79, comment *a* at 237 (1971); Stumberg, *The Status of Children in the Conflict of Laws*, 8 U. Chi. L. Rev. 42, 55 (1940).

In the instant case, the parents and the alternative forums, *i.e.*, Washington or Idaho, have a substantial interest in providing a final resolution of this custody matter, and the paramount concern of all parties should be the welfare of the children. Idaho, under its law, cannot enter a binding decree awarding permanent custody to a parent in the absence of at least the temporary physical presence of the children in that forum. *Schmitt v. Schmitt*, 83 Idaho 300, 306, 362 P.2d 884, 887 (1961). Even if the mother were to consent to the jurisdiction of the Idaho courts to entertain this matter, the physical presence of the children apparently would be required. This would require a change in

---

comment *a* (1971); Comment, *Developments in the Law: State-Court Jurisdiction*, 73 Harv. L. Rev. 909, 978 (1960).

[7]Domicile is more than just residence. It is a legal inference gained from the surrounding facts, *e.g.*, physical presence, declared intention, conduct, etc. *In re Mullins*, 26 Wn.2d 419, 444, 174 P.2d 790 (1946). In Washington, the domicile of the child follows that of the parent having legal custody. *In re Rankin*, 76 Wn.2d 533, 536, 458 P.2d 176 (1969).

[8]Restatement of Conflict of Laws § 146, comment *c* (1934).

[9]Considerations relating to the technical distinctions between theories of jurisdiction, whether in rem or in personam, and whether courts have before them the "res" of the child's "status" or his person, have been criticized as being irrelevant to the paramount concern of the custody proceeding, the child's welfare. *See* A. Ehrenzweig, *A Treatise on the Conflict of Laws* § 87, at 289 (1962); Ehrenzweig, *Interstate Recognition of Custody Decrees*, 51 Mich. L. Rev. 345, 351 (1953); R. Leflar, *American Conflicts Law* § 245, at 586 (1968); Stansbury, *Custody and Maintenance Law Across State Lines*, 10 Law & Contemp. Prob. 819, 823 (1944); Stumberg, *The Status of Children in Conflict of Laws*, 8 U. Chi. L. Rev. 42, 62 (1940).

their environment, if not their actual physical custody, which would be disruptive to the children's well-being and contrary to the policy of this jurisdiction. *See In re Marriage of Saucido*, 85 Wn.2d 653, 662, 538 P.2d 1219 (1975) (Finley, J., concurring); *Anderson v. Anderson*, 14 Wn. App. 366, 368, 541 P.2d 996 (1975); RCW 26.09.260 (c). These circumstances, coupled with strong considerations of social policy which require that at least one of the alternative state forums should have the juridical power to render a final adjudication as to both parents' rights to the custody of their children,[10] strongly militate against a conclusion that Idaho is a convenient forum to hear and decide the merits of this case.

Although there may be some evidence in Idaho pertaining to the children, Washington can best determine the most suitable custodial parent because it has access to the maximum amount of information regarding the mother's background, the children's adjustment to their home, school, and community,[11] and access to witnesses. Ratner, *Child Custody in a Federal System*, 62 Mich. L. Rev. 795, 808-09 (1964); Comment, *Foreword: Political Theory and the Nature of Liberty*, 67 Harv. L. Rev. 91, 124 (1953); *see Kovacs v. Brewer*, 356 U.S. 604, 614, 2 L. Ed. 2d 1008, 78 S. Ct. 963 (1958) (Frankfurter, J., dissenting); Currie, *Full Faith and Credit, Chiefly to Judgments: A Role for Congress*, 1964 Sup. Ct. Rev. 89, 117; Comment, *Developments in the Law: State-Court Jurisdiction*, 73 Harv. L. Rev. 909, 979 (1960). Another element of litigational convenience that makes this jurisdiction the more suitable forum to entertain the custody proceeding is the fact that the mother would incur the

---

[10]*See May v. Anderson*, 345 U.S. 528, 539, 97 L. Ed. 1221, 73 S. Ct. 840 (1953) (Jackson, J., dissenting); Currie, *Justice Traynor and the Conflict of Laws*, 13 Stan. L. Rev. 719, 769 (1961).

[11]RCW 26.09.190 provides, in part:

"The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

". . .

"(4) The child's adjustment to his home, school, and community;

. . ."

greatest expense and inconvenience in traveling to a foreign jurisdiction to present her case with her four children as opposed to the minimal cost and inconvenience incurred by the father in traveling to this state.

■ Finally, and most importantly, the father *purposely* brought the children to this forum and could fully anticipate that a custody proceeding would be initiated here. The relationship of the parties to the underlying controversy, to this jurisdiction, and Washington's interest in the custody action makes this the most convenient forum to address and resolve the issues at hand. *See Smith v. York Food Mach. Co., supra* at 725; Orland & Fischnaller, *Jurisdiction Salad: Washington Style*, 9 Gonzaga L. Rev. 1, 37 (1973); von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv. L. Rev. 1121, 1167 (1966). The exercise of jurisdiction by this forum does not offend due process requirements because the elements of "fair play and substantial justice" weigh heavily in favor of entertaining the action in this jurisdiction.

In conclusion, we are convinced that the record provides ample evidence to provide a basis for the exercise of jurisdiction and that the use of Washington's long-arm statute does not offend the due process standards established in *International Shoe Co. v. Washington*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057 (1945).

The judgment of the superior court is reversed and the cause is remanded to the superior court with directions to grant permanent custody to the mother and to provide for reasonable support and visitation rights as to the father.

ROSELLINI, HUNTER, HAMILTON, WRIGHT, and BRACHTENBACH, JJ.

HOROWITZ, J. (dissenting)—Petitioning mother's sole assignment of error raises the controlling question whether the trial court had jurisdiction over defendant father to enter the child custody findings, conclusions, and decree as proposed by the petitioner mother. The trial court held by virtue of *May v. Anderson*, 345 U.S. 528, 97 L. Ed. 1221, 73 S. Ct. 840 (1953), it lacked jurisdiction to award child

custody to the mother for want of jurisdiction in personam over the father.

The majority, in the instant case, though highly critical of *May v. Anderson, supra,* does not refuse to follow it. Instead it holds there is sufficient evidence in the record here to show the trial court had jurisdiction over the father by virtue of the long-arm statute. RCW 4.28.185(1)(b). Under that statute jurisdiction may be acquired over the nonresident, nondomiciliary father upon proof *inter alia* the father had theretofore committed a "tortious act within the state" so as to permit relief to be awarded "as to any cause of action arising from the doing of said acts." Accordingly, the majority awards relief to the mother as if the trial court had in personam jurisdiction over the father.

I cannot find record support for the view the father committed a "tortious act within the state" so as to enable in personam jurisdiction over the father to be obtained pursuant to the long-arm statute. If RCW 4.28.185(1)(b) is inapplicable, it is still necessary to decide whether the trial court was nevertheless required to enter petitioner's proposed findings, conclusions, and decree because their entry would not impair the father's right to petition for an award of custody of his minor children.

First the matter of record support as claimed in the majority opinion must be considered. The majority argues that an evidentiary inference can and should be drawn from petitioner's affidavit filed in the cause on January 6, 1975, to the effect that "the father has not provided for the support of the children" and that the inference so drawn is "a convincing, if not inescapable evidentiary inference" and is "ample evidence." It must be remembered the tort of nonsupport of the children alone is insufficient, the statute requires that the tortious act occur "within this state." RCW 4.28.185(1)(b).

The record shows the father, a resident and domiciliary of Idaho, delivered the children to the mother in Spokane, Washington on December 26, 1974, during the Christmas holiday season. The father's purpose in delivering the chil-

dren is not shown in the record. The majority agrees there may not be "sufficient evidence in the record to indicate that the father had delivered the children to the mother in Washington *for the purpose of abandoning them.*" The opinion also states "[t]he record does not reflect where the parents lived prior to the time the children were turned over to the mother." Thus, there is no evidence in the record that the father failed to support the children in Washington prior to December 26, 1974. The remaining period covered in the affidavit relied on in the majority opinion is the 8-day period from December 27, 1974, to January 3, 1975, during which time the children were physically present with their mother in the state of Washington. It is therefore necessary to find the father failed to support the children in Washington during or in respect of the 8-day period.

In petitioner's complaint against defendant father, filed on the same day her affidavit was filed, petitioner states under oath that "$10 per child per month" was a reasonable sum to be paid by defendant for child support "considering [defendant's] disability." The nature of the disability is not described. Petitioner in that complaint then claimed the child custody support payments in the amount she has stated were "reasonable." Eight thirty-first's of $10 per month is a little less than $2.58 per child or a total of $10.32 for the four children. Can it be said the father committed the tort of nonsupport in Washington in the sum of $2.58 per child during the 8-day period? I think not.

It is true, that if a father fails to make a support payment on a due date, such as one ordered by a court decree, the father commits an act of nonsupport. Here, however, there was no due date because no decree or statute fixed a particular date for the payment of support and maintenance. There was not even a request for payment during that 8-day period or any refusal to make a payment during that 8-day period. The affidavit does not state that in delivering the children to the mother on December 26, 1974, the father abandoned or intended to abandon the children in

Washington with a view to no longer supporting them. An unexplained nonpayment during the 8-day period, especially when as next shown a substantial payment was in fact received by the mother between December 27, 1974, and January 3, 1975, negates any inference that the father failed to provide support either on a particular day, or to use the language of the Model Penal Code, "persistently [failed] to provide support which he can provide . . ." Model Penal Code § 230.5 (1974).

Petitioner's affidavit states that petitioner received:

From approximately November 22, 1974 to December 27, 1974: $300 per capita.

From December 27, 1974 to present: $400. The unexpended portion of Joseph and Dale Miller's per capita payments; These funds could only be used for necessities for the boys and they were so used.

These payments appear to have been made for the benefit of the children. There is no statement that nothing remained for the children's use from the $300 per capita payment or the $400 paid in the 8-day period following December 26, 1974. The affidavit does not state the person from whom the payment was received. For all the affidavit shows, the payment may have been made by the father after receipt in connection with some payment program resulting from his disability, government grant or assistance, or otherwise.

There is indeed a reference in petitioner's affidavit to "My assets: cash on hand $15.00." This reference, however, appears to refer to the mother's own funds as distinguished from the funds for the children, considering that the purpose of the affidavit was to show petitioner's inability to pay for the litigation out of her own funds so that she might be permitted to proceed in forma pauperis.

The truth of the matter is, the affidavit was never intended to address itself to the question of nonsupport by the father as a basis for rendering the long-arm statute applicable. Petitioner never claimed below that the long-arm statute applied to confer jurisdiction over the father.

Indeed in her opening and reply briefs on appeal, necessarily based on the trial record, she made no such claim, notwithstanding argument in respondent's brief the long-arm statute was inapplicable. Considering: (1) the lack of evidence of any intention by the father to refuse or repudiate his obligation of providing support in Washington for his children; (2) both the exceedingly small amount involved and the very short durational period of 8 days on which to base an inference of nonsupport in Washington; (3) the mother's receipt of per capita payments for the children, the last one described being made in the 8-day period, with no claim or showing in the affidavit that they were not sent by or on account of the father for the use of the children; and, (4) without any claim or showing in the affidavit that no balance remained from the payments so made for the use of the children, I see no "evidentiary inference" the father failed to support his children in the 8-day period so that it could be fairly said the father committed a "tortious act within this state" within the meaning of Washington's long-arm statute. Accordingly, I cannot agree the claimed "evidentiary inference"—which is basic to the majority's argument and the relief it authorizes—may properly be drawn from the petitioner's affidavit.

The theory upon which the case was tried below appears to be the court had no in personam jurisdiction over the father so as to bind him to the decree. Petitioner's proposed findings, conclusions, and decree not only do not assert jurisdiction over the father, they appear to be drawn on the assumption the court lacked jurisdiction over the father. No provision for child support is made and a proposed conclusion of law provides that, in an appropriate motion for child custody, the father would not be required to show "a change of circumstances." Proposed conclusion of law No. 2. Had petitioner believed the court did have jurisdiction she would have sought the relief authorized by the majority opinion rather than the more limited relief provided by her own proposed findings, conclusions, and decree.

It does not follow, however, that because the trial court

lacked in personam jurisdiction over the father that it lacked jurisdiction to enter the kind of findings, conclusions, and decree proposed by the mother. Before explaining the reasons for this view, it is necessary to explain why *May v. Anderson*, 345 U.S. 528, 97 L. Ed. 1221, 73 S. Ct. 840 (1953) should not prevent their entry.

In *May v. Anderson, supra,* a Wisconsin court awarded custody of the couple's children (present in Ohio) to the father, domiciled and resident in Wisconsin as the result of a divorce action instituted by him there. Jurisdiction over the mother was sought by personal service upon her in Ohio of a copy of the Wisconsin summons and petition. The Wisconsin statute, however, authorized such service in an action for divorce but made no mention of its availability in a proceeding for child custody. The father, relying upon the Wisconsin decree, commenced a proceeding in Ohio, where the mother and the children were residing, challenging her right to retain custody of the children. The Ohio court held it was bound by the Wisconsin decree because the children had never lost their Wisconsin domicile. The mother appealed to the United States Supreme Court which reversed.

The rationale used by the Supreme Court in holding the Ohio court could not give full faith and credit to the Wisconsin decree is not altogether clear. On the one hand, *May v. Anderson* has been interpreted as holding only that Wisconsin, in the absence of the physical presence of the children, had no jurisdiction to enter a decree affecting the custody of those children and that therefore Ohio was not bound to honor the Wisconsin decree. Hazard, *May v. Anderson: Preamble to Family Law Chaos,* 45 Va. L. Rev. 379, 383 (1959). On this interpretation *May v. Anderson* is distinguishable from the instant case, because here the petitioning mother and her children were both domiciled and physically present in Washington at and prior to the time the custody petition was filed.

On the other hand, the opinion also appears to hold that in the absence of personal jurisdiction over the mother, the Wisconsin court did not have jurisdiction to enter a decree

of permanent custody in favor of the father, regardless of the domicile or physical presence of the children. *May v. Anderson, supra* at 532-34; Hazard, *supra* at 384.

The *May v. Anderson* decision has been severely criticized for its apparent disregard of the welfare of the children and for its failure to adopt a rule parallel to that adopted in divorce cases brought by a domiciliary of the forum state against a nondomiciliary spouse.

> The majority decision in May v. Anderson focuses on one aspect of the custody problem and entirely overlooks all others. By drawing the analogy to rights of property the Court emphasizes its assumption that the only problem in custody is to adjudicate parental rights in a child, just as the divorce court must sometimes adjudicate the rights of spouses in a house or an automobile. No thought is given to the protection of the child, to the fact that the courts act in these cases as parens patriae, or to the possibility of enforcing any decree granted. No reference is made to the extensive literature on custody jurisdiction or to the various suggested bases for jurisdiction.
>
> . . .
>
> . . . In short, the case of May v. Anderson is an aberration which ought to be overruled at the earliest opportunity.

(Footnotes omitted.) H. Clark, *Law of Domestic Relations* 324-26 (1968); *see* Note, 38 Minn. L. Rev. 273, 275 (1954). Concerning its failure to adopt a rule parallel to that adopted in ex parte divorces, it has been stated:

> Why is it that personal jurisdiction is not required to sever a spouse's marital ties to his mate but is required to sever (or curtail) a parent's parental ties to his child? There is no logical basis at all on which to differentiate so sharply between the two situations.

(Footnote omitted.) Hazard, *May v. Anderson: Preamble to Family Law Chaos*, 45 Va. L. Rev. 379, 387 (1959).

*May v. Anderson* did not involve the use of a long-arm statute for the purpose of obtaining jurisdiction over the absent parent. The absent mother, it is true, was served with process but the summons by publication statute made no provision for such service in child custody cases. Ac-

cordingly, the court applied due process principles and held that the absent parent (mother) was entitled to notice and opportunity to be heard before permanent custody of the children was taken from her. Had the statute made provision for such service of process, jurisdiction would have been obtained and a different question would have been presented.

In the instant case, the majority opinion makes no claim that RCW 4.28.100 (the publication of summons statute) or RCW 26.09.180(2) (notice to a parent in a child custody proceeding) applies. The majority holds the long-arm statute applies because the unmarried father failed to discharge his duty of child support in Washington and therefore committed a tortious act therein. I agree such a duty of support exists. *See* RCW 26.20.030; RCW 26.24.090; *Kaur v. Chawla*, 11 Wn. App. 362, 522 P.2d 1198 (1974). I disagree, however, with the majority's claim the father failed to support his children in Washington so as to be subject to the long-arm statute.

There is Washington case support, direct and indirect, for the view that pursuant to the petition filed, the court has jurisdiction to determine the child custody issue as to the mother and her minor children based at least on their domicile, and certainly on their domicile and physical presence. *In re Marriage of Saucido*, 85 Wn.2d 653, 538 P.2d 1219 (1975); *Chandler v. Chandler*, 56 Wn.2d 399, 353 P.2d 417 (1960); *In re Rankin*, 76 Wn.2d 533, 458 P.2d 176 (1969); *In re Mullins*, 26 Wn.2d 419, 174 P.2d 790 (1946); *State ex rel. Ranken v. Superior Court*, 6 Wn.2d 90, 106 P.2d 1082 (1940).

A court is not powerless to enter a custody decree binding only upon the mother and her children based on their domicile and physical presence in this state. Such a decree is not a nullity. In referring to *May v. Anderson, supra*, it has been correctly stated that:

The opinion of the Court protects only the rights of parents, and the domiciliary court is justified in asserting jurisdiction to settle the question of custody (subject to modification) for all other purposes.

B. Currie, *Justice Traynor and the Conflict of Laws*, in *Selected Essays on the Conflict of Laws* 629, 678 (1963).

That the father's custodial rights are not impaired can be readily demonstrated. A person not made party to a proceeding, and not in privity with a party, is not bound by that decree. *In re Peterson's Estate*, 74 Wn.2d 91, 93, 442 P.2d 980 (1968); *Glandon v. Searle*, 68 Wn.2d 199, 202, 412 P.2d 116 (1966); Restatement of Judgments § 93 (1942); 50 C.J.S. *Judgments* § 820 (1947). The father here, of course, was not in privity with the mother in the custody proceeding because each had a separate legal right to the children's custody. *See* RCW 26.28.110.

Moreover, courts have upheld decrees affecting the status of adopted or dependent children even in the absence of one or both parents as parties before the court.

In *Beatty v. Davenport*, 45 Wash. 555, 559, 88 P. 1109 (1907), the court upheld an adoption upon the consent of the father when there was no notice to the mother:

> The decree of adoption was binding only upon the parties before the court and their privies. It was not binding upon respondent because she was neither a party nor a privy to it. The court, therefore, had no jurisdiction to determine her rights. . . . Such parties may be heard upon questions of both law and fact as fully as though no judgment had been rendered.

In *DeWitt v. Brooks*, 143 Tex. 122, 182 S.W.2d 687 (1944), a child was adjudged a dependent child in a proceeding in which neither parent was given notice. The court held the judgment was valid, subject only to the parents' right to a full hearing on the child's dependency:

> The power of the State to so adjudge a child to be dependent where the facts warrant it, without notice to the parents where they are inaccessible, must necessarily exist because of the exigencies of the case. Children of tender years who have been abandoned or neglected and are in distress cannot wait for attention indefinitely while search is being made throughout the country for their parents and service is had on them . . .
>
> . . .
>
> But where the parents are without notice of the pro-

ceedings, they must be allowed a full hearing in a subsequent proceeding on the issue of whether sufficient facts existed as to authorize the entry of the judgment of dependency.

*DeWitt v. Brooks, supra* at 127-28; *accord, Allen v. Williams*, 31 Idaho 309, 171 P. 493 (1918); *Farnham v. Pierce*, 141 Mass. 203, 6 N.E. 830 (1886).

The decree in the instant case would bind only the parties before the court—the mother and children.

Proposed conclusion of law No. 2 reads:

Petitioner and respondent's fitness to assume care and custody of the above-named minor children has been determined by default and testimony of the petitioner. Therefore, under the circumstances of this case, respondent may by appropriate motion in this Court seek modification of the terms of the decree to be entered herein, without having to show a change of circumstances.

This conclusion was not expressly included in the proposed decree, perhaps as a result of inadvertence. However, Washington case law prior to the enactment of RCW 26.09 enables the proposed decree, if entered, to be construed to permit the matter of custody to be considered on a de novo basis whenever both parties first appear before this court. *In re Rankin, supra* at 536-37; *White v. White*, 24 Wn.2d 52, 57, 163 P.2d 137 (1945); *Weber v. Weber*, 6 Wn. App. 722, 726, 496 P.2d 576 (1972). The factors bearing on child custody would be those set forth in RCW 26.09.190 rather than those set forth in RCW 26.09.260, dealing with modification of a prior custody decree.

When entered, the proposed decree is valid as to the mother and children. It may be enforced by contempt proceedings against one who violates the mother's custody of the children awarded by the court. Analogical support for this view is furnished by cases involving the use of the contempt remedy in enforcing temporary or permanent injunction orders against a nonparty with notice of the order. RCW 7.20.010(5); *State v. Mecca Twin Theater & Film Exch.*, 82 Wn.2d 87, 507 P.2d 1165 (1973). A father who seeks to obtain possession of the children must seek redress

through the courts and not by self-help. *See State v. Perkins*, 88 Conn. 360, 91 A. 265, 267 (1914).

In sum, the proposed custody decree, because it binds only the mother and children, does not prejudice the rights of the father in any way and therefore does not deny the father due process. *See Allen v. Williams, supra.* Indeed, the decree is consistent with the father's duty to provide care, education, and support for his minor children. RCW 26.20.030; 26.24.090; *Kaur v. Chawla, supra.* If the father wishes to have his custody rights adjudicated, he may obtain such an adjudication without showing "changed circumstances." The trial court, therefore, may enter the findings, conclusions, and child custody decree as presented for entry. The decree, if necessary, may be enforced by the use of contempt proceedings.

Such a decree would not prevent the mother, if she wishes to do so, proceeding against the father for child support, based upon a showing of nonsupport by the father, that would enable the court to obtain in personam jurisdiction over the father under the long-arm statute. In that same proceeding or independently thereof and on the same jurisdictional grounds a mother may obtain a child custody decree binding upon the father upon a proper showing pursuant to the provisions of RCW 26.09.190.

The oral testimony given in support of the petition is not in the record on appeal. There is no claim the findings (including a finding "petitioner is a fit and proper person to be awarded care, custody, and control of said minor children") are not supported by the evidence. I would reverse with direction to enter petitioner's proposed findings, conclusions, and decree awarding custody of her minor children to the mother.

STAFFORD, C.J., and UTTER, J., concur with HOROWITZ, J.